[Sac. No. 2181.  Department One.—May 15, 1915.]

THOMAS BRILES, Respondent, v. A. J. PAULSON,
Appellant.

VENDOR AND VENDEE—OPTION TO PURCHASE—PERFORMANCE OF CONDI-
TIONS—REASONABLE TIME—EQUITY.—Where a party held an option
to purchase certain land within a stated time upon performing
certain conditions with a provision allowing the other party to
cancel the option in case of nonperformance of the conditions
within the time, failure to perform within the time specified will
entitle the other party to cancel the option, and a court of equity
would not be justified in relieving the party from the consequences
of his failure to perform within the time specified, since this would
amount to making a new contract for the parties and would compel
the owner to sell his land on terms different from those to which
he had agreed.

APPEAL—POWER TO WEIGH CONFLICTING TESTIMONY.—An appellate
court cannot weigh the testimony before the lower court in case
of conflict therein and findings supported by such testimony must
be sustained by the appellate court.

APPEAL from a judgment of the Superior Court of Modoc
County.  Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

Cornish & Robnett, for Appellant.

W. Lair Thompson, and Jamison & Wylie, for Respondent.

SLOSS, J.—The plaintiff brought this action to obtain a
decree declaring that the rights of the defendant under a
certain written contract were terminated.  The contract was
executed by the plaintiff and one J. J. Payseur.  The de-
fendant, Paulson, is the assignee and successor in interest
of Payseur.

By the terms of the contract, which was dated December 5,
1910, Briles, in consideration of a payment of one hundred
dollars, granted to Payseur the option of purchasing certain
lands in Modoc County for seventeen thousand dollars, at
any time up to December 31, 1915.  Payseur was to have
a subdivision of the land made, and prices aggregating seven-
teen thousand dollars were then to be put upon the various

parcels, such parcels to be subject to separate purchase at the prices thus fixed. Payseur, if he exercised his option to purchase all or any of the land, was to pay one-fourth of the price in cash, and the balance in installments as provided in the agreement. Payseur was given the right to make sales to third parties, he to receive all of the purchase price above the sums (aggregating $17,000), which were to go to plaintiff.

By the agreement the second party (Payseur) "agrees that he will raise the dam upon the reservoir situated upon the aforesaid lands to a height of twenty-five feet and will construct the same of substantial width and of sufficient solidity to withstand water pressure so that the water contained in said reservoir shall not be liable to burst therefrom. Said reservoir to be completed on or before November 1st, 1911." There was a further provision that if the party of the second part, his heirs or assigns, should fail, neglect, or refuse to carry out and perform each and every agreement contracted to be performed by him, the party of the first part (Briles) might, at his option, declare the agreement terminated and annulled except as to parcels already contracted to be sold.

In June, 1911, Payseur assigned the contract to the defendant Paulson, and on October 5, 1911, Briles and Paulson executed a writing modifying the clause of the main contract relative to work on the dam. By the modification it was provided that Paulson should, on or before November 20, 1911, widen the dam "fifteen feet and raise said dam, when thus widened, four feet higher than present dam."

On March 22, 1912, the plaintiff served on the defendant a notice that he elected to terminate and annul the contract of December 5, 1910, because of the failure of the defendant to comply with his agreement (as modified) to raise and widen the dam by November 15, 1911.

The complaint set up the foregoing facts, and alleged that defendant had not widened the dam more than eight feet, or raised it to a height greater on the average than two feet. The prayer was for judgment that plaintiff was the owner of the land, that the contract be declared terminated, and that it be surrendered for cancellation. The defendant, in his answer, asserted that he had fully performed, but prayed that, if it should be found that his attempted performance

was imperfect, he be allowed a reasonable time to complete the same.

The findings of the court were in favor of the plaintiff, and judgment followed as prayed by the complaint. The defendant appeals from the judgment.

It is urged that the evidence does not support the finding that defendant had not widened the dam more than eight feet, nor raised it more than two feet. But the argument made in this behalf is evidently based upon the notion that this court may weigh opposing testimony, and determine that the statements made by the defendant's witnesses, rather than those of the witnesses for plaintiff, should have been given credence. Such determination cannot, of course, be made by an appellate court Where there is a substantial conflict in the evidence, the finding of the court below must be sustained here. Without question the record in this case discloses such substantial conflict.

The only other point made by appellant is that, even though there had been a failure to do the required work within the time limited, his rights under the contract should not have been forfeited outright, but he should have been allowed a reasonable time to complete performance. It is argued that, since equity abhors forfeitures, the defendant should be relieved from the effect of his failure to perform within the stipulated time. The provision regarding time was not, it is claimed, of the essence. Whatever force this argument might have if the agreement had been one binding the plaintiff to sell and the defendant, or his assignor, to buy, it certainly can have no application to the contract which was in fact made. That contract created a mere option, under which the defendant had the privilege of buying (but was not bound to buy), within a certain time, "subject to the conditions herein contained." One of the conditions was that he should do certain work on the dam before a given date, and another was that if he failed to perform this, or any other thing agreed by him to be done, the plaintiff might terminate the contract. The defendant could not convert the option into an agreement of sale, binding upon the plaintiff, except by complying with the conditions upon which the plaintiff had agreed to sell. (*Richardson* v. *Hardwick*, 106 U. S. 254, [27 L. Ed. 145, 1 Sup. Ct. Rep. 213]; *White* v. *Bank of Hanford*, 148 Cal. 552, [83 Pac. 698].) "Ac-

ceptance must be made and conditions performed within the time, if any, limited by the option, in order to constitute a contract of sale, time being of the essence in such contracts.'' (39 Cyc. 1241, and cases cited.)   A court of equity would not be justified in relieving a party from the effect of his failure to comply with the conditions on which he had been granted the privilege of buying.   This would be making a new contract for the parties, and compelling the owner to sell when he had not agreed to do so.   "The assent or act of acceptance," as the court said in *Steel* v. *Bond,* 32 Minn. 14, 21, [18 N. W. 830], ''whether by payment or the fulfillment of some other condition, was necessarily to be made within the time limited; otherwise, no contract could be consummated.   Equity cannot vary the terms of such a stipulation by an extension of the privilege.   The time limited for acceptance or payment is, in such case, part of the contract or option, and equity cannot interfere, unless in cases where the jurisdiction can be properly invoked on the ground of fraud or mistake, which is not alleged here.''

The judgment is affirmed.

Shaw, J., and Lawlor, J., concurred.