[Civ. No. 6650.   Third Dist.   Dec. 17, 1941.]

RUDOLF MOAR et al., Appellants, v. THE PIONEER–
  LUCKY STRIKE GOLD MINING COMPANY (a
  Corporation) et al., Respondents.

Andrew L. Pierovich, *in pro. per.*, Michael F. Shannon and Thomas A. Wood for Appellants.

Horowitz & McCloskey for Respondents.

ROSS, J. *pro tem.*—The Pioneer-Lucky Strike Gold Mining Company, a corporation, is referred to herein as "Pioneer" and Anozira Mining Company, a corporation, as "Anozira."

In the trial court three actions were consolidated. The first case was that of Rudolf Moar, Richard Moar, Nick Moar, and A. L. Pierovich, as executor of the estate of Frank Shafter, deceased, against Pioneer and Anozira. This was a quiet title action, and the defendant Anozira cross-complained and brought in other cross-defendants, mainly, James Douglas and James McKenna. The second action is for conversion of personal property, brought by Anozira against the Moars, Pierovich, Douglas and McKenna, and the third action is for forcible entry and detainer, also brought by Anozira against the same persons. In this opinion "the plaintiffs" means the plaintiffs in the first action. The decision as to the second and third actions depends greatly on the suit to quiet title and the main questions herein are connected with the first action.

On July 5, 1932, Shafter, now deceased, and the Moars, made an agreement with T. H. Rosenberger for sale of certain mining claims in Amador County, California. The option price was $55,000, of which $2500 was paid down. $12,000 was to be paid on or before July 5, 1933, $12,000 on or before January 5, 1934, $12,000 on or before July 5, 1934, and $16,500 on or before January 5, 1935. Also it was agreed that 20% royalty on the net smelter or mint proceeds would be paid to plaintiffs each month, with a guarantee of $1000

minimum per month. Later this agreement was assigned by Rosenberger to Pioneer, through one Horowitz. A supplemental agreement in August, 1932, provided, among other things, that notice by registered mail should be given by the sellers to the buyers of any alleged breach of covenant and that buyers should then have thirty days within which to rectify said breach.

Operations by Pioneer started early in December, 1932. The first month's royalty became due January 10, 1933. In the meantime it had appeared that there was some litigation pending, a suit by R. I. Irons against the Moars and Shafter, based on a former contract of sale made between them for purchase by Irons of the mining claims. It was claimed that Irons had defaulted in his payments, and also his interest in the claims had been sold under execution for labor claims against him and had been bought in by the plaintiffs herein. The Irons contract, however, was recorded in the county recorder's office of Amador County. There was also on record a contract between plaintiffs herein and Jack Darnell covering an agreed sale of the same claims. The Irons contract was dated July 12, 1930, and the Darnell contract February 26, 1931.

In the first part of January, 1933, because of the Irons litigation, there were negotiations between Pioneer and the plaintiffs which led to the impounding by the American Smelting and Refining Company of the 20% royalty due the plaintiffs on the concentrates shipped by Pioneer to said company. This impounding continued, although there were requests by plaintiffs that Bank of Amador County should be the depositary.

In the meantime the Irons case was tried in February, 1933, and judgment adverse to Irons was rendered on May 31, 1933. On March 1, 1933, Irons filed a second suit, including Pioneer as a defendant. Demurrers in that suit were filed but never were determined. In August, 1933, Irons filed a third suit which was tried in January, 1934, in which another judgment was given against him. However, a motion for new trial was granted (later vacated as to Pioneer, *Irons* v. *Superior Court,* 10 Cal. App. (2d) 523 [52 Pac. 553]), and the case was tried again late in 1935 and judgment was again rendered against Irons. In October, 1933, a quitclaim deed from Darnell to the plaintiffs had been recorded, ending litigation against him by plaintiffs.

In January, 1934, a notice of default was given by plaintiffs to Pioneer. In February, 1934, Pioneer assigned all its rights to Anozira. Soon after this plaintiffs filed suit for possession against Pioneer and Anozira. This is referred to in the record herein and in this opinion as the ejectment suit. Later the American Smelting and Refining Company interpleaded in this action claiming $37,670.66, the total amount in its hands. It had been requested by plaintiffs when this action was commenced to impound, not only the 20% royalty, but all proceeds from concentrate sales to it by Pioneer or Anozira. The mine was closed down in March, 1934, by Anozira because it depended on the proceeds from the smelter to operate.

In 1933, plaintiffs made an agreement with Douglas and McKenna, by which the latter financed all litigation with the understanding that they would get a lease or option from the plaintiffs on these mining claims when the claims of Pioneer, Anozira and Irons had been disposed of.

The suit between plaintiffs and Anozira and Pioneer was tried before a jury in July and August, 1935, as to the issue of possession, and the verdict was rendered in favor of defendants. The court then tried the issue as to disposition of the interpleaded money and in January, 1936, rendered judgment giving plaintiffs $27,674.03 and Anozira $9996.63 of this money. The clerk later paid the respective parties these amounts.

However, in January, 1935, another notice of default had been given by plaintiffs to Anozira and Pioneer for alleged failure to make any payments and alleged failure to work the mine properly, etc. At that time no payment had been made except the initial $2500, but the $37,000 had been paid into court by the operators of the smelter, in the first suit, which was still undetermined. Thirty days was given Anozira and Pioneer to correct their alleged breaches of covenant.

In May, 1935, a lease was given on the mining claims by plaintiffs to Douglas and McKenna, and in June, 1935, plaintiffs and Douglas and McKenna entered the premises, dispossessed Anozira's watchman, took over all the tools and machinery and operated the mine for a time. This is the basis of the conversion and forcible entry actions herein.

On receiving the notice of default in January, 1935, Anozira wrote plaintiffs that it "does hereby tender the entire unpaid purchase price referred to. . . . Will you please advise when and where the cash may be delivered to you, at which time, of course, we will want to receive an instrument of conveyance." This was ignored.

After the judgment in the ejectment suit, which was in January, 1936, the instant quiet title action was commenced on March 9, 1936. On March 30, 1936, Anozira notified the plaintiffs that it would personally tender the unpaid purchase price to them at the Bank of Amador County, in Jackson, California, on April 13, 1936, at 11 a. m. At that time a representative of Anozira appeared there with $22,-500 and tendered it, but was refused.

To turn back briefly, plaintiffs had made an agreement with one Bedford to pay him 10% of the purchase price received by them on this deal, of which they had paid only $500. On the total purchase price of $55,000 Bedford would still have $5000 due him. He had later assigned this claim to Anozira, which apparently considered that this should be deducted from the amount still due from it to plaintiffs. No point was made on this in the refusal of the tender of April 13, 1936.

The three instant cases were tried twice as consolidated cases. On the second trial judgment was given in January, 1939, quieting the title of plaintiffs, but making it subject to the Rosenberger agreement, and directing a conveyance to Anozira on payment of the $55,000 purchase price, with deductions for the $2500 down payment, the $27,674.03 received by plaintiffs in the ejectment suit, the $5000 due on the Bedford agreement, and the amounts and costs awarded to Anozira in the conversion and forcible entry actions, by which Anozira was given $2433 for the conversion of its machinery and tools and $4093.44 damages for the forcible entry and detainer, these judgments being against both the plaintiffs and Douglas and McKenna. The court held the Rosenberger agreement to be valid and subsisting in favor of Anozira.

The determination of the quiet title action directly affects that of the conversion and forcible entry actions. If the judgment establishing Anozira's rights under the Rosenberger contract is correct, the evidence justifies the damages

given for the conversion and forcible entry. If the rights of Anozira under this contract had been forfeited, the conversion and forcible entry actions would fail.

Many of the points of law raised by the parties in their briefs need not be considered. Whether the agreement was an option or a conditional sale contract does not matter. If it was an option only, a court could not relieve a buyer from default unless there were fraud on the part of the seller. (*Briles* v. *Paulson,* 170 Cal. 196 [149 Pac. 169].) Whether the plaintiffs waived any default by accepting the $27,674.03 in the ejectment action or whether the judgment in that action made *res judicata* the alleged defaults prior to that judgment or only prior to the filing of the complaint need not be passed upon.

The court here found that Anozira was not in default and that any failure to make payments or to do work in the mine was due to the litigation which clouded the title throughout, and to the conspiracy between plaintiffs and Douglas and McKenna which led to some of that litigation with the consequent refusal of the operators of the smelter to pay Anozira any proceeds on its shipments of concentrates, etc. These findings are fully supported and justified by the evidence.

Just as soon as the ejectment suit was finally determined in 1936, Anozira sent its representative to Jackson to make the personal tender of all unpaid purchase price. It made a tender in open court also at the trial of the instant actions.

Prior to the 1936 tender a large part of the unpaid purchase price had been impounded by what was virtually an agreement between the parties, although there were variances such as the impounding by the smelter itself instead of using the Bank of Amador County. It was understood that the impounding would continue until plaintiffs could clear their title of the litigation.

In the 1933 agreement between plaintiffs and Douglas and McKenna we read, "It being understood and agreed that title free and clear of all encumbrances to said property, cannot be given and granted unless and until the two actions of R. I. Irons against second parties hereto and the action by said second parties against Jack E. F. Darnell shall have been settled and determined in favor of said second

parties.'' Plaintiffs recognized that their title was clouded and that the impounding of money due was justified, and agreed to it. The first Irons suit did not settle the matter; the other two had to be disposed of. In fact, one of them still had undetermined demurrers on file at the time of the trial herein.

■ It is true that a purchaser cannot refuse to pay because of defects in title and still keep the property (*Garvey* v. *Lashells,* 151 Cal. 526 [91 Pac. 498]), but here plaintiffs permitted defendants to continue in possession so long as the purchase price was being impounded until the determination of the first Irons suit. Probably sufficient receipts would have been impounded to pay the whole purchase price when Irons' claims had been finally disposed of if plaintiffs, with Douglas and McKenna, had not interfered with the impounding plan.

■ Plaintiffs' claim of forfeiture rests on its notice of default of January, 1935. At that time over $37,000 was being held by the operators of the smelter, Anozira had succeeded to Bedford's claim for $5000 and Anozira had been forced out of mining operations by plaintiffs' ejectment suit, later adjudged adversely to them, and by their unjustified demands on the smelter. The trial court rightly found that under these circumstances, Anozira was not in default at that time.

The findings of the trial court were that the delay in payments on the purchase price and the cessation later of operation of the mine was due in part to the actions of plaintiffs themselves and their conspiracy with Douglas and McKenna, and that therefore there was no default on the part of defendants. The sole question is whether the evidence supports these findings. We hold that it fully does so.

The judgment in the three consolidated actions is affirmed.

Thompson, Acting P. J., and Tuttle, J., concurred.