[Civ. No. 18430.   First Dist., Div. One.   Oct. 22, 1959.]

LOUIS F. ROSENAUR et al., Appellants, v. JOSEPH M. PACELLI et al., Respondents.

J. J. Quill for Appellants.

Truce & Veal for Respondents.

WAGLER, J. pro tem.*—This is an action for specific performance of an option to purchase agreement contained in a written lease of certain real property, or in the alternative for damages for breach of contract and for declaratory relief.

The trial court found that the option had not been exercised within the time of its life, denied plaintiffs all relief, and rendered judgment in favor of the defendants on their cross-complaint quieting their title to the property in question. Plaintiffs have appealed upon a clerk's and reporter's transcript.

The agreement is dated April 23, 1954. It consists of a printed form (Standard Business Property Lease) with the blanks appropriately filled in by typewriter. By it respondents Joseph M. Pacelli and Wilma Pacelli, his wife, leased the property in question to appellants for a period of three years commencing April 15, 1954, and ending April 14, 1957. Section 20 of the printed form reads as follows: "20. Time is hereby expressly declared to be of the essence of this lease and all the covenants, agreements, conditions and obligations herein contained."

The option agreement was typewritten at the end of the printed form. It reads as follows: "21. Option to Purchase. Lessor hereby gives to lessee the privilege of purchasing the premises at anytime after April 16, 1955 and prior to February 14, 1957, for Twenty-five Thousand Dollars ($25,000.00) cash, *provided that in the event lessee desires to exercise this*

---

*Assigned by Chairman of Judicial Council.

*privilege he shall first give lessor written notice of not less than sixty (60) days of his election to exercise."* (Emphasis added.)

Plaintiffs interpreted[1] the last phrase of the foregoing paragraph as requiring them to give written notice of the exercise of said option 60 days prior to February 14, 1957. Defendants and the trial court concurred in such interpretation and since notice was admittedly not given until February 2, 1957, the court held that the option had expired.

Plaintiffs have not challenged the trial court's construction of the "60-day" clause which they first expounded. They have, however, attempted to avoid the effect of such construction on the theory: (1) that "the option agreement [is] separate from the provisions of the lease . . . so as to make paragraph 20 of said lease . . . the 'Time is of the essence' paragraph, inapplicable to the option agreement," and (2) that they have " 'substantially performed' the terms of the option so as to [be entitled] to specific performance of the option provision or in the alternative, to damages."

The record before us (without material conflict) discloses the following facts. On February 2, 1957, appellant Louis R. Rosenaur telephoned respondent Wilma J. Pacelli and informed her that appellants "were going to go ahead with the purchase of the property; that [he] was opening an escrow . . . that . . . a formal letter of notification would follow." This letter which was admitted in evidence over respondents'

---

[1] "MR. QUILL: I will make a brief statement of our position. This, as Your Honor knows, revolves around a lease which contained an option to buy. I believe the evidence will show that the lease required the lessee to notify the lessor in writing approximately 60 days before exercise of option in order to purchase. Lessee did not do this. He notified the lessor on or about February 2, 1957, of his intention to purchase, at which time he was notified by the lessor that they would not go forward with the purchase because the notice had not been timely.

"It is the position of the plaintiff in this case that the lease itself and the option to purchase are divisible and separable; that that is by operation of law in California, and also by agreement of the parties; that the failure to give notice 60 days prior was not a defect to which the lessor could object, since lessee, the optionee, had deposited the money and stood ready, willing and able to perform at all times during the agreement.

"MR. TRUCE: Well, if the court please, the position of the defendant is, of course, that the option was not exercised on time; therefore, they have no rights under the option."

Although the option clause is not without ambiguity, and although a faulty concession does not relieve a court of the duty to declare the law as it is, it is submitted that the trial court's interpretation was proper under the circumstances. (See Civ. Code, § 1636.)

objections is set forth in the footnote.[2] At the time of the aforementioned conversation and for some time after the receipt of the letter, defendants did intend to sell to plaintiffs. However, prior to February 13, 1957, after talking to his brother, who had an undisclosed interest in the property, defendant Joseph M. Pacelli concluded that the exercise of the option was not timely and on said date notified plaintiffs of his intention not to go through with the sale.

Immediately after sending the letter of February 2 (the written notice of acceptance), plaintiffs opened an escrow for the transfer of the property and they have at all times been ready and willing to pay the purchase price. The trial court concluded that the foregoing facts did not entitle plaintiffs to the relief sought. We agree.

In support of their contention that paragraph 20 (the "time is of the essence" clause) is not applicable to the option agreement, plaintiffs cite the familiar rule that "in the absence of a provision [in a lease] making the exercise of the option to purchase personal to lessee, [citation] such option may be separated from the lease and transferred by the lessee independently of the leasehold interest." (See 35 C.J., § 181, p. 1038; *Spaulding* v. *Yovino-Young*, 30 Cal.2d 138 [180 P.2d 691].) The authorities relied upon by plaintiffs, however, do not support their contention that paragraph 20 of the lease is not also applicable to paragraph 21 (the option clause). A reasonable interpretation of paragraph 20, we believe, requires that it be held applicable to the option as well as to the lease. It refers not only to the "lease" but also to "all covenants, agreements, conditions and obligations [t]herein contained." Certainly the option agreement must be considered an "obligation [t]herein contained."

However, the applicability of paragraph 20 to the option is really immaterial. The very nature of an option, which by its terms must be exercised within a specified time, compels the inescapable conclusion that time is of the essence, and no express provision to that effect is required. An option is but an offer, which if not accepted within the time prescribed, expires by its own terms. In *Rice Lands*

<hr>

[2] 'Dear Mr. & Mrs. Pacelli:

"This will confirm my telephone conversation of this morning in which I informed you of our intention to purchase the herein described property in accordance with the provisions for purchase set forth in our lease.

"We propose to use the California Pacific Title Co. of Redwood City as escrow holder and we will forward to you a copy of the title search soon as we receive it."

*etc. Co.* v. *Blevins,* 61 Cal.App. 536, 541 [215 P. 402], the court said: "It may be stated as a general rule that time is of the essence of an option to purchase within a specified time, without being expressly made so by the contract. . . . 'A limitation of the time for which a standing offer is to run is equivalent to the withdrawal of the offer at the end of the time named. The rule that in equity time is not of the essence of a contract does not apply to a mere offer to make a contract. An acceptance after the time limited in the offer will not bind the person making the offer, unless he assents to the acceptance so made after it is made.' " (To the same effect: *White* v. *Bank of Hanford,* 148 Cal. 552 [83 P. 698]; *Briles* v. *Paulson,* 170 Cal. 196 [149 P. 169]; *Canty* v. *Brown,* 11 Cal.App. 487 [105 P. 428]; *Wightman* v. *Hall,* 62 Cal.App. 632 [217 P. 580]; *Huckaby* v. *Northam,* 68 Cal.App. 83 [228 P. 717]; *Moar* v. *Pioneer-Lucky Strike G. Min. Co.,* 48 Cal. App.2d 528 [120 P.2d 48]; *Fowler* v. *Case,* 89 Cal.App.2d 140 [200 P.2d 130].)

▮ Since the option expired 60 days prior to February 14, 1957, defendants were at liberty after December 16, 1956, to treat it as nonexistent.

▮ The evidence heretofore summarized was apparently offered by plaintiffs in support of their theory of substantial performance.[3] Under the admitted facts, however, there existed no basis for the application of such doctrine. ▮ The equitable doctrine of substantial performance assumes the existence of a binding contract in the first instance. ▮ Here there was none because the offer (the option) had expired before the attempted acceptance. Nor did plaintiff's telephone conversation with Wilma Pacelli on February 2 or their letter of the same date give rise to a new contract. Such activities on the part of plaintiffs must be considered as nothing more than new offers which remained unaccepted. For, regardless of what the unexpressed intentions of defendants may have been prior to February 13, the

---

[3]In reply to objections by defendants' counsel, plaintiffs made the following statement: "Mr. Quill: If Your Honor please, we hope to show that this Plaintiff has substantially performed, that although he did not, by his own admission, send the writing prior to 60 days before exercise of the option, that he didn't notify the owner in writing, and that that was not a material deviation; that the time was not that compelling, that there was no loss suffered by the lessors; that the loss, if any, could be recompensed in dollars; that he has done everything but meet a technical requirement; that he has, in fact, substantially performed."

record is barren of any evidence that either the oral or written offer above mentioned was accepted by defendants or any of them. Furthermore, such offers, if accepted, would fall squarely within the provisions of Civil Code, section 1624, subdivision 4, which require that a contract for the sale of real property to be valid must be in writing and "subscribed by the party sought to be charged."

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.