**In re CENTINELA CHURCH OF CHRIST, a California corporation, Debtor.**

**CENTINELA CHURCH OF CHRIST, a California corporation, Appellant,**

**v.**

**CALVARY FULL GOSPEL ASSEMBLY OF INGLEWOOD, etc., et al., Appellees.**

**Consolidated BAP Nos. CC–80–1050–GVH, CC–81–1011–GVH.**

**Bankruptcy No. LA 80–05135 CA.**

**Adv. No. LA 80–1259 CA.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued May 21, 1981.

Decided Jan. 12, 1982.

Alan G. Novodor, Kaplan & Novodor, Beverly Hills, Cal., for appellant.

Brian K. Burgess, Reinjohn, Clements & Burgess, Los Angeles, Cal., for appellees.

Before GEORGE, VOLINN, and HUGHES, Bankruptcy Judges.

## OPINION

GEORGE, Bankruptcy Judge:

Shortly after filing a Chapter 11 petition, on June 4, 1980, the appellant-debtor filed an action against the appellees seeking to enforce specifically an oral option agreement, wherein the appellant was to buy certain real property from the appellee, Calvary Full Gospel Assembly of Inglewood. Subsequently, the appellees requested, and were granted, a partial summary judgment. In granting the appellees' motion for summary judgment, the court found, *inter alia*, that the option was not enforceable and that it was not timely exercised. A trial was held on November 12, 1980, to determine whether monies advanced to the appellees over the course of the negotiations between these parties should be returned to the appellant. The court held that the monies were paid for an option and were rendered non-refundable by the debtor's failure to exercise the option.

The appellant has filed a notice of appeal from both the partial summary judgment and the judgment finding the monies to be nonrefundable. These appeals have been consolidated for disposition by way of this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The appellee, Calvary Full Gospel Assembly of Inglewood, was at all pertinent times the owner in fee simple of the subject real property located in Inglewood, California. In January 1977, the appellant, Centinela Church of Christ, entered into a written agreement with this appellee to lease the property in question for one year. The lease contained an option to purchase the Inglewood property for $370,000. This 1977 agreement also contained an acknowledgement by the appellee that it had received $100,000 from the debtor toward the purchase price. The agreement also acknowledged that the balance due on the purchase price was $270,000.

In January 1978, when the lease was about to expire, Reverend John Jackson, the appellant's authorized agent, could not raise the money necessary to exercise the 1977 option. The parties then agreed to cancel the 1977 lease, credit the sums paid by the appellant to rent and enter into another written lease. This 1978 lease provided a second option to purchase the subject property for $370,000. No credit was given for the previous payment. The appellant was to exercise the option by paying $40,000 on or before July 13, 1978. The

option further specified that escrow was to close no later than January 13, 1979, with the appellant either paying the balance of $330,000 or assuming the appellee's mortgage of $154,000 and paying the remainder in cash. The 1978 lease also provided that if the option were not exercised, the lease would terminate on January 13, 1979, and all sums paid by the appellant would be deemed to be rent for the use and occupancy of the property. (The appellant has been paying over $3,000 per month in rent.)

The appellant did not pay the appellee the $40,000 until December 12, 1978. At that time, Dr. David Ralph, the appellee's business manager and agent, warned Jackson that, if he could not complete the transaction, he might forfeit the $40,000. Nevertheless, the appellant did not exercise the 1978 option.

On February 7, 1979, the parties entered into a third agreement. This agreement was a three-month written lease which cancelled the 1978 agreement. The lease provided that it would terminate no later than April 13, 1979; it did not contain an option to purchase the real property. The parties orally agreed, however, to extend the option to purchase for the 90-day life of the lease. The following conditions of this three-month oral option are not in dispute:

1. It had to be exercised on or before April 13, 1979;

2. An escrow between the parties had to be closed by April 13, 1979;

3. The appellant had to pay the appellee at least $215,000 by April 13, 1979.

By April 11, 1979, the appellant still had not exercised the oral option. However, Reverend Jackson did contact Dr. Ralph, on this date, to inform him of two tentative commitments he had obtained for financing the purchase. Jackson also attempted to obtain an extension of the option at that time. He was informed by Dr. Ralph, however, on the evening of April 12, 1979, that the trustees of the Calvary Church had denied his request for another extension of the option. During this conversation, Jackson was told that Dr. Ralph had been re-

lieved of his authority to represent the appellee in the transaction and that the new agent for Calvary Church was its then-attorney, George Catlin. (Also during this conversation, Jackson acknowledged that he had only 24 hours in which to exercise the option.)

On April 13, 1979, the deadline for closing escrow, Jackson telephoned Catlin's office, ostensibly to exercise the option. At that time, however, Jackson was informed that Catlin would not be available until the following Monday, April 16, 1979. On Monday, Catlin telephoned Jackson and informed him that the option had expired. He also told Jackson that the appellant would have to vacate the building.

On April 27, 1979, the appellee filed an unlawful detainer action in state court against the appellant. After a jury trial, in May 1980, judgment was rendered in favor of the appellee. On June 4, 1980, the appellant filed its Chapter 11 petition. A week later, it filed its complaint with the bankruptcy court to specifically enforce the option agreement. On October 20, 1980, the court granted the appellee's motion for partial summary judgment. The court determined the following, at that time:

1. That the option was not enforceable under the statute of frauds, because it was neither reduced to writing nor supported by consideration;

2. That time was of the essence as to the oral option and the appellant did not timely exercise the option;

3. That tender was a prerequisite to a finding of breach of contract and a judgment for specific performance and that the debtor had not actually tendered payment nor had it shown an ability to do so on or before April 13, 1979;

4. That the appellee in no way prevented the appellant from exercising the option, closing the escrow, or depositing money into escrow on or before April 13, 1979.

On November 12, 1980, the trial was held to determine whether the monies paid to the appellee should be returned to the appellant. The court thereafter held that the

said monies were paid for options and, since the options were never exercised, the funds were not recoverable.

## II. ANALYSIS OF THE FACTS AND THE LAW

■ The rule has long been established in California and elsewhere that time is of the essence as to the exercise of purchase option agreements and that "no relief can be given to the late optionee, who has received all that he bargained for—a limited period in which to purchase on specified terms." 7 B. Witkin, Summary of California Law, *Equity*, § 67, at 5290 (1974). *See also Rosenaur v. Pacelli*, 174 Cal.App.2d 673, 676, 345 P.2d 102 (1959).

■ The rule that an option must be exercised within the stated period has been interpreted by many California courts to apply in a general sense only to the actual acceptance. *See Murfee v. Porter*, 96 Cal. App.2d 16, 214 P.2d 543 (1950). In cases where acceptance alone is sufficient, the optionee has a reasonable time after acceptance within which to make the agreed purchase payment. However, where the option specifies the form of election, it must be strictly followed. *See, e.g., Landberg v. Landberg*, 24 Cal.App.3d 742, 752, 101 Cal. Rptr. 335, 341 (1972).

■ In the case at bar, the oral option did specify the requirements for acceptance. The appellant had to exercise the option in a timely fashion; he had to pay at least $215,000; and an escrow had to be closed by April 13, 1979. None of these events occurred and the option expired.

Even if timely acceptance alone would have been sufficient to exercise the option, it would not change the result, as no such acceptance was ever made. Indeed, no notice of acceptance was left with the appellee's agent or his staff, no escrow instructions were signed, and no money was deposited by the appellant into escrow. All of these things could have been done, unilaterally, on the part of the appellant.*

The general standard that an appellate court applies in reviewing the granting or denial of a summary judgment motion is the same as that employed by the trial court under Fed.R.Civ.P. 56. A summary judgment is proper when it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This test is applied at the appellate level by viewing the record in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## III. CONCLUSION

■ In utilizing this standard, we hold that the trial court correctly determined that no material issues of fact were in dispute and that the appellees were entitled to a judgment in their favor, as a matter of law. Under the "clearly erroneous" standard of Fed.R.Bankr.P. 810 and Fed.R. Civ.P. 52(a), we further hold that the bankruptcy court's finding that the monies advanced by the appellant to the appellee were for options may not be set aside, since it is supported by the trial court record. Furthermore, we uphold the trial court's conclusion that when the options expired, these funds were lawfully credited to rent for the appellant's use and occupancy of the property.

AFFIRMED.

---

* Rendered moot by our decision in this matter is the additional argument raised by the appellant that it was ready, willing, and able to perform.

This is not a material issue, in light of the fact that the appellant never, in fact, exercised its "option."