In re Astarte Davis RICE, Debtor.

Edward M. WALSH, Trustee of the Estate of Astarte Davis Rice, Appellee,

v.

ALPHA FINANCIAL GROUP, Century 21 d/b/a Alpha Financial Group, H.B. Steven Raskin and First American Title Guarantee Company, Appellants.

BAP No. NC–86–1180 VMoE.
Bankruptcy No. 4–81–01690 HW.
Adv. No. 4–85–0091 AW.

United States Bankruptcy Appellate Panel, Ninth Circuit.

Argued and Submitted Nov. 20, 1986.

Decided Nov. 30, 1987.

Keith A. Kandarian, San Francisco, Cal., for appellants.

Dennis D. Davis, Goldberg, Stinnett & MacDonald, San Francisco, Cal., for appellee.

Before VOLINN, MOOREMAN and ELLIOTT, Bankruptcy Judges.

PER CURIAM:

The trustee, pursuant to 11 U.S.C. §§ 549 and 550(a)(1), filed a complaint to avoid the debtor's post-petition transfer of a promissory note secured by a deed of trust. The bankruptcy court granted the trustee's motion for summary judgment. We affirm.

## FACTS

The debtor, Astarte Davis Rice, bought certain real estate in Contra Costa County, California, on October 19, 1978. The property consisted of a residence located at 2221 Loch Lane in Walnut Creek. On January 18, 1980, she quitclaimed this property to her husband James Rice who, on May 15, 1980, transferred title back to her by quitclaim deed under an alias, Estebelle White. One year later, on May 15, 1981, the debtor filed bankruptcy in Oakland, California, in Alameda County, under the name Astarte Davis Rice. She made no mention of the fact that she owned real estate in Contra Costa County under the name Estebelle White. The debtor's husband, James Rice, also filed bankruptcy. His schedules likewise made no mention of the real estate in Contra Costa County.

The trustee filed a no asset report on July 16, 1981 and the bankruptcy case was closed.

Having fraudulently concealed her interest in the Contra Costa County property, the debtor, employing the alias Estebelle White, together with the names Astarte Davis and Astarte Rice, transferred her interest in the property by grant deed to Walter C. Bell and his wife Barbara Bell on April 12, 1982. She received in payment a promissory note of $108,783 secured by a deed of trust, which was recorded in Contra Costa County. The payee of the note and the beneficiary of the deed of trust were designated only as Astarte Davis.

Thereafter, the trustee learned of the debtor's fraud and obtained an order reopening the bankruptcy case on August 30, 1982. On April 10, 1984, more than a year after the case had been reopened and approximately two years after Mrs. Rice had sold the property to the Bells, a stipulated judgment was entered against her providing that the Bell note of $108,783 and the deed of trust securing the note were assigned by operation of law to the trustee in bankruptcy. The judgment further provided that the Bank of America, which was collecting the payments on the note, would disburse to the trustee all funds it held or collected, and that the Bells were to make all future payments due under the note directly to the trustee.[1] The Bank of America was advised of the judgment by the trustee.

Although Mrs. Rice stipulated that the note was assigned to the trustee, she falsely advised him that she had lost it. From the record, it appears that she began trying to dispose of the illicitly retained note shortly after the entry of the stipulated judgment. In May, 1984, she conducted negotiations exclusively by mail with AApex Financial Group, the predecessor of one of the defendants, Alpha Financial Group ("Alpha"), for sale of the note. Mrs. Rice eventually sold the note to the appellant H.B. Steven Raskin. The sale was

---

1. There were other provisions in the stipulated judgment relating to other properties, including Mrs. Rice's interest in a promissory note of some $15,000 and a Jaguar automobile.

arranged by Alpha, his agent, and closed on September 19, 1984.

The Bells had been making their payments to the Bank of America, the collection agent designated by Mrs. Rice. On February 24, 1983, the trustee, through counsel, advised the Bank of America that Mrs. Rice had pleaded guilty to the charge of failing to disclose her ownership of the Contra Costa County real estate and enclosed copies of the information and judgment in her criminal case. The trustee also informed the bank that Mrs. Rice had sold the property to the Bells without his knowledge or consent. He also advised the bank that the note was property of the estate and all future payments must be turned over to the trustee.

Thereafter, on April 23, 1984, the bank advised the trustee that it was remitting to him the accumulated payments of $16,-181.48 acknowledging: "We have been informed that all further payments be sent to you directly."

On April 24, 1984, the trustee wrote to Mr. and Mrs. Bell:

Enclosed is a Judgment Pursuant to Stipulation relating to that certain promissory note between you and Astarte Davis. As you can see, the note has now become the property of the bankruptcy estate and all further payments thereon are due to the trustee.

We have already made demand upon Bank of America and the bank is turning over all of the funds paid to it by you heretofore.

In the future, please make all payments to Edward Walsh, Trustee ...

On July 30, 1984, the trustee, through counsel, advised the Bells:

As you will recall, the undersigned represents Edward M. Walsh, trustee in bankruptcy for the estate of Astarte Davis Rice. In reviewing our file, I note that the full principal becomes due on April 12, 1985. As you can appreciate, a bankruptcy trustee is in no position to refi-

nance loans. Therefore, Mr. Walsh will be expecting full payment of principal on that date.

On May 21, 1984, Astarte Davis Rice (White), who had been negotiating with AApex Financial, wrote to AApex, enclosing copies of "the items you requested." She stated in her letter that she would be out of town, that her telephone was on vacation hold and that Mr. Beltran, agent of AApex, should write to her at a post office box in Walnut Creek, California. She again wrote on July 24, stating that she would like the matter to be handled in escrow. Finally, on September 5, 1984, she transmitted documents of transfer and stated that she expected, after deduction of fees from the agreed price of $92,000, a cashiers check or a certified check for the balance to be sent to a post office box in Sacramento, California.[2] The assignment of the deed of trust was executed by the debtor as Astarte Davis.

The record does not show when or in what manner AApex, Alpha, and Raskin checked with the Bells or the bank as to the status of or the balance of the note, particularly how much was owing to Mrs. Rice. The Bells furnished declarations stating that "between October 3, 1984 and March of 1985, we made six (6) payments, each in the amount of $1,155.82 to Alpha Financial Group as our monthly interest obligations on the aforementioned note. In making those payments, we had understood that Mr. Walsh, the trustee, had assigned his interest to Alpha Financial." It is not specified how or why the Bells arrived at this understanding. Obviously, it was not from the trustee or the bank.

In any event, the trustee demanded full and final payment of the note on April 16, 1985. At this point, the various parties learned of their involvement in Mrs. Rice's fraudulent scheme and finally realized that they were entangled in a common web.

---

2. The debtor's assignment of the Bell note and deed of trust states:

For value received, we the undersigned do hereby grant and assign to H.B. Raskin, a widower, the within note together with all rights accrued or to accrue under the Deed of Trust securing the same so far as the same relates to this note without recourse on us.

## DISCUSSION

### I.

■ An appellate court reviews a summary judgment *de novo*, in the light most favorable to the nonmoving party, to determine whether there are any genuine issues of material fact and whether the trial court correctly applied the relevant substantive law. *See Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986); *In re Centinela Church of Christ*, 16 B.R. 877, 880 (9th Cir.BAP 1982).

### II.

■ In his statement of the case, appellant sets forth his basic argument as follows:

> Although the Trustee knew RICE was dishonest and had been convicted of a bankruptcy crime, the Trustee never took possession of the note, nor did he record notice of the bankruptcy or notice of the judgment assigning him the interest in the note and deed of trust. RICE, who retained possession of the note, was therefore able to sell the note and deed of trust to RASKIN. RASKIN had no notice of the Debtor's dishonesty, nor did he have notice of the bankruptcy case itself. He purchased the note and deed of trust through a real estate brokerage/firm (sic), after a title search was conducted. The search revealed no infirmities in RICE's apparent title to the note and deed of trust.

From this premise he concludes that the trustee had a duty to record notice of the bankruptcy petition in Contra Costa County, situs of the real property which Rice sold to the Bells in exchange for the note secured by a deed of trust. Appellant cites *Collier on Bankruptcy* in support of this proposition: "The purpose of section 549(c) is to protect against a fraudulent debtor selling real property, or its interest therein, to an innocent purchaser who has no knowledge, or reasonable means of knowledge, of the pendency of the bankruptcy case." 4 *Collier on Bankruptcy* ¶ 549.03 at 549–12 (15th ed. 1987).

Implicit in appellant's contention is the assumption that Rice, the "fraudulent debtor," sold him an interest in real property. That is not the case. Rice sold Raskin a promissory note secured by a second deed of trust. A promissory note secured by a deed of trust on real property retains its identity as personal property. *See Riebe v. Budget Financial Corp.*, 264 Cal.App.2d 576, 70 Cal.Rptr. 654, 659 (Cal.Ct.App. 1968); *Johnson v. National Surety Co.*, 118 Cal.App. 227, 5 P.2d 39, 40 (Cal.Ct.App. 1931). Thus, recordation in the real property record of notice of a petition in bankruptcy or of notice of transfer to the trustee in bankruptcy of a note, even though secured by the real property, would not constitute constructive notice to the purchaser of the promissory note. *See Haulman v. Crumal*, 13 Cal.App.2d 612, 57 P.2d 179, 183 (Cal.Ct.App.1936); *Ross v. Title Guarantee & Trust Co.*, 136 Cal.App. 393, 29 P.2d 236, 238 (Cal.Ct.App.1934).

Parenthetically, in light of the plethora of aliases used by Mrs. Rice, we question whether or not recordation of the petition in bankruptcy, followed by appellant's title search, would have provided appellant with knowledge of the trustee's interest in the note and succession as beneficiary of the deed of trust. The bankruptcy petition was filed by the debtor as Astarte Davis *Rice*. The payee of the note is Astarte *Davis*, which is the name under which she assigned the note to appellant. The deed of trust securing the note likewise shows the beneficiary to be Astarte *Davis*. Thus, assuming *arguendo* that the trustee was required to record "a copy or notice of the petition ... where a transfer of such real property may be recorded to perfect such transfer" (11 U.S.C. § 549(c)) if he wished to set aside the post-petition transfer of the note, fulfillment of that requirement may not have afforded appellant record notice that the note was the property of the bankruptcy estate.

### III.

#### A.

The appellant contends that the trustee, knowing of the missing note, should have

recorded either the judgment assigning the deed of trust to him as trustee or notice of his interest as trustee, thereby imparting public notice as to his succession as holder of the note; and that the failure of Mrs. Rice, known to be dishonest, to turn over to the trustee a negotiable instrument, independently obligated the trustee to record. Thus, appellant asserts that because the trustee did not record, equity compels a finding that the trustee, rather than the appellant, should bear the loss. As indicated, appellant's argument assumes that a purchaser of the note would be required to review the real property records. This argument turns on the assumption that the pertinent interest is one in real estate. As stated above, the interest possessed was a negotiable instrument which is personal property.

Also underlying appellant's argument is the assumption that in doing equity, the bankruptcy court may alter to some extent, or adjust the specific terms of a statute to fit the equities of a given case. The balancing of these considerations is well stated in *In re Tucson Yellow Cab Co.*, 789 F.2d 701, 704 (9th Cir.1986):

> The "overriding consideration" in bankruptcy is that "equitable principles govern." *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). The old equity notions—equity loves equality, equity *is* equality, equity considers done what ought to be done—still have vitality. Nonetheless, the principles of equity may not be invoked in freewheeling fashion. They must be directed to the care and preservation of the estate. *Bildisco*, 465 U.S. [513] at 527, 104 S.Ct. [1188] at 1197 [79 L.Ed.2d 482]. They also necessarily operate within the boundaries set by statute.

See also *In re Shoreline Concrete Co., Inc.*, 831 F.2d 903, 905 (9th Cir.1987) (although bankruptcy courts sit as courts of equity, they are constrained by the equitable maxim "equity follows the law.")

**B.**

■ Appellant further contends that the Uniform Commercial Code provisions regarding the rights of a holder in due course are to be read in harmony with the Bankruptcy Code, and thus, the transfer of the note to appellant may not be avoided because of the protections afforded a holder in due course. Appellant cites Section 70(d)(5) of the former Bankruptcy Act, the Act's counterpart to Section 549(c) of the Code, which governed the avoidance of post-petition transfers and explicitly stated that, "nothing in this title shall impair the negotiability of currency or negotiable instruments." Bankruptcy Act of 1898, ch. 541, § 70, 30 Stat. 544, 565, as amended at ch. 575, § 70(d)(5), 52 Stat. 840, 882 (1938), (repealed 1978). Appellant asserts that this specific protection, although omitted from the Bankruptcy Code, still obtains, and that Congress, while failing to reenact Section 70(d)(5), did not intend to change the policy embodied in the former Act.

We must presume that the deletion of protection for holders of negotiable instruments from Section 549 of the Bankruptcy Code was not an oversight, but an intended modification of the prior law. Absent a clearly expressed legislative intent to the contrary, the language of a statute must ordinarily be regarded as conclusive. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 549, particularly in the light of its history, does not afford any protection to holders of negotiable instruments. *See 4 Collier on Bankruptcy* ¶ 549.03 at p. 549-10 (15th ed. 1987). Thus, assuming that Raskin was a holder in due course,[3] that status would not preclude the trustee's avoidance of the post-petition transfer of the note.

**IV.**

■ Appellant contends that if the trial court did not err in allowing the trustee to avoid the transfer of the note from Rice to Raskin, then it should have allowed the

---

**3.** The bankruptcy court did not rule on the issue of whether or not Raskin was a holder in due course.

transaction to be avoided only to the extent that the value of the property exceeded the amount Raskin paid for the note. In other words, the transfer should be voidable only to the extent of $16,783, the amount by which the $108,783 face value of the note exceeds the $92,000 that Raskin paid for the note.

In support of his argument, appellant cites 11 U.S.C. § 550(a)(1), which provides, in pertinent part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made ...

Appellant refers to legislative history which explains that the liability of a transferee under Section 550(a) applies only to the extent that a transfer is avoided. That is,

liability is not imposed on a transferee *to the extent that a transferee is protected under a provision* such as section 548(c), which grants a good faith transferee for value of a transfer that is avoided only as a fraudulent transfer, a lien on the property transferred to the extent of value given.

124 Cong.Rec. 32,400 (1978) (emphasis added). Appellant reasons from this aspect of legislative history, and the fact that the bankruptcy court is a court of equity, that as a good faith transferee, he should have a lien to the extent of the $92,000 that he paid for the note.

Appellant would be entitled to a lien in the amount of the purchase price of the note if, as the initial transferee of the note, he were protected under some provision of the Code. For example, appellant's argument might be applicable in a suit under Section 548 of the Code to recover a fraudulent transfer. However, the Code contains no provision which would allow the appellant to set off the amount he paid for the note against the value of the note.

Section 550(a) of the Code allows the trustee to recover either the property transferred post-petition or the value of the property to the extent that such a transfer is avoided under Section 549. Because there is no Code provision which would enable appellant to set off the amount he paid for the note against the value of the note, the trustee may recover, in its entirety, either the note or its face value.

CONCLUSION

■ Section 549 allows the trustee to recover all post-petition transfers, except those that fit within the statute's narrow exceptions. The court in *Lake v. New York Life Ins. Co.*, 218 F.2d 394, 399 (4th Cir.1955), *cert. denied* 349 U.S. 917, 75 S.Ct. 606, 99 L.Ed. 1250 (1955), in addressing the trustee's power to avoid post-petition transfers under former Section 70(d) acknowledged the harsh results which may result from the use of that power:

It is obvious that the intent of this enactment is to invalidate transactions not granted specific protection under the Act and thus put to an end the confusion theretofore existing in the decisions. There is almost always some injustice or hardship which attends transactions occurring after the filing of a petition of bankruptcy between the bankrupt, acting wrongfully, and an innocent third person, because the loss must fall either upon the third person or upon the creditors of the bankrupt. Whether the line which has been drawn is the best possible solution of the problem is not for the courts to say. The line has in fact been drawn by competent authority and it is no longer necessary for the courts to make the attempt, which has not been conspicuously successful in the past, to decide cases on the facts as they arise and to draw a fine distinction between transactions which should be protected and those which should not.

This case well illustrates the dilemma described by the court in *Lake*. Either the appellant, as the recipient of a post-petition transfer by a fraudulent debtor, or the creditors of the estate must suffer because of the wrongdoing of Mrs. Rice. It is true

**14**

that the trustee did not at any time record notice of his interest in the note secured by real property, and that had he done so, notice of the trustee's interest in the note would, fortuitously, have been available to the appellant as a result of his title search. The linchpin of appellant's argument is that the creditors of the estate should bear the loss because he would not have purchased the note but for the trustee's failure to give record notice of his security interest in the real property.

Because the property transferred was personal property and therefore not subject to exception from reach of the statute, appellant's arguments are to a considerable extent based on equitable principles. However, the policy of the Bankruptcy Code, as expressed in 11 U.S.C. § 549, is to empower the trustee to avoid post-petition transfers by the debtor, with certain narrow exceptions not applicable here.

The judgment of the bankruptcy court is affirmed.