OPINION
Plaintiff-appellant, J. Lee Covington, II, Superintendent of the Ohio Department of Insurance, acting as Liquidator of Personal Physician Care, Inc. ("PPC"), appeals from the September 7, 2001 judgment entry denying appellant's objections to the magistrate's decision filed May 21, 2001, approving and adopting the magistrate's April 27, 2001 decision granting summary judgment to defendants-appellees, University Hospitals of Cleveland, University Hospitals Lab Service, UHHS Bedford Medical, Rainbow Babies and Children's Hospital, and Pathology Associates of University Hospitals. For the reasons that follow, we affirm.
Appellees are all health care providers who provided services under provider agreements with PPC, a licensed health insurance corporation operating two HMOs. On November 27, 1997, PPC was placed under the supervision of the Superintendent of Insurance. In August 1998, appellant's predecessor in office, Harold T. Duryee, determined that PPC was in such financial condition that further transaction of business would be hazardous financially to its policyholders, creditors, or the public. The superintendent brought an action against PPC, and the Franklin County Common Pleas Court issued an order of rehabilitation on August 12, 1998. Harold T. Duryee v. Personal Physician Care, Inc., caseNo. 98CVH08-6251. The order directed the rehabilitator to "take and secure possession of all assets and property of Defendant PPC, including, but not limited to, all property, contracts, deposits, securities, rights of action, accounts, safe deposit boxes and books and records of Defendant, wherever located, and administer them under the general supervision of the Court."
On August 20, 1998, the court entered an order of liquidation and appointment of receiver. Appellant has since succeeded Harold T. Duryee and has been automatically substituted as liquidator for PPC pursuant to Civ.R. 25(B).
While under the supervision of the superintendent, but before the order of rehabilitation was entered, PPC issued numerous checks to appellees totaling approximately $120,000. Appellees presented the checks for payment on or after August 12, 1998, after the rehabilitation order was entered, but before appellant closed PPC's bank account. Additionally, one of the checks at issue in this action was issued on August 12, 1998, the day the order of rehabilitation was entered, and two checks were issued on August 14, 1998. There have been no allegations that any of the checks were unauthorized, there is no evidence that the rehabilitator attempted to stop payment on the checks, there is no evidence of fraud, and appellant has not alleged that either the bank that honored the checks or appellees had knowledge of the order of rehabilitation at the time the checks were honored.
Appellant, acting in his capacity as liquidator, brought this action on February 10, 2000, alleging the transfer of funds was invalid as against the rehabilitator and/or liquidator, and appellant was entitled to recover the funds that were transferred. The parties filed cross-motions for summary judgment indicating there were no factual disputes. Both sides claimed that they were entitled to judgment as a matter of law.
Appellant argued that, pursuant to R.C. 3903.13, when appellees presented their checks for payment, PPC had no assets, as the bank account was an asset of the rehabilitator. In pertinent part, R.C. 3903.13(A) states that: "[t]he rehabilitator is vested by operation of law with the title to all property, contracts, and rights of action of the company as of the date of the entry of the judgment of the court order directing rehabilitation." Appellees, on the other hand, took the position that they were holders in due course of negotiable instruments, and R.C.3903.27(C) specifically states that "[n]othing in sections 3903.01 to3903.59 of the Revised Code [the liquidation statute] shall be construed to impair the negotiability of currency or negotiable instruments." Thus, according to appellees, transfers under R.C. 3903.27 that would normally be considered invalid, were not invalid as to appellees because of their holder in due course status.
The motions were referred to a magistrate who, on April 27, 2000, rendered a decision granting appellees' motion for summary judgment and denying appellant's motion for summary judgment. Appellant filed objections to the magistrate's decision.
On August 8, 2001, the trial court issued its decision denying the objections, and approving and adopting the magistrate's decision. The trial court's decision was filed August 9, 2001, and judgment was entered in favor of appellees on September 7, 2001.
This appeal followed, with appellant assigning as error the following:
"The trial court erred by ruling, as a matter of law, that the Liquidator of Personal Physician Care, Inc., an insolvent insurance company, could not, pursuant to R.C. 3903.27, recover funds from checks sent to providers before the rehabilitation order had been issued against the insolvent insurance company but not cashed until after the rehabilitation order had been issued against the insolvent insurance company."
Appellate court review of summary judgment motions is de novo. Heltonv. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on a summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
Resolution of appellant's assignment of error requires us to construe R.C. 3903.27(B) and (C), which provides as follows:
"(B) After a complaint for rehabilitation or liquidation has been filed and before either the rehabilitator or liquidator takes possession of the property of the insurer or an order of rehabilitation or liquidation is granted:
"(1) A transfer of any of the property of the insurer, other than real property, made to a person acting in good faith shall be valid against the rehabilitator or liquidator if made for a present fair equivalent value, or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien on the property so transferred.
"(2) A person indebted to the insurer or holding property of the insurer may, if acting in good faith, pay the indebtedness or deliver the property, or any part thereof, to the insurer or upon his order, with the same effect as if the complaint were not pending.
"(3) A person having actual knowledge of the pending rehabilitation or liquidation shall be deemed not to act in good faith.
"(4) A person asserting the validity of a transfer under this section has the burden of proof. Except as elsewhere provided in this section, no transfer by or on behalf of the insurer after the date of the complaint for rehabilitation or liquidation by any person other than the rehabilitator or liquidator is valid against the rehabilitator or liquidator.
"(C) Nothing in sections 3903.01 to 3903.59 of the Revised Code shall be construed to impair the negotiability of currency or negotiable instruments."
The intent under the Ohio liquidation statute appears to be to invalidate transfers made after the rehabilitation order is entered unless they are granted specific protection under the statute. In addition, the statute contains the explicit proviso that it is not to be construed in a manner that impairs the negotiability of currency or negotiable instruments. Thus, we must construe the Ohio liquidation statute in tandem with Ohio law governing negotiable instruments and determine, whether under these facts, invalidating the transfers impairs the negotiability of the checks at issue.
Here, PPC, the issuer of the checks, issued the checks while under the supervision of appellant in his capacity as superintendent. There is no question that the checks at issue were "negotiable instruments" within the meaning of R.C. 1303.03.
Appellees were the payees and claim they were holders in due course of the checks. They presented the checks for payment after PPC was placed into rehabilitation, but without actual knowledge of the court order.
A holder in due course is defined in R.C. 1303.32(A) as "the holder of an instrument if both of the following apply:
"(1) The instrument when issued or negotiated to the holder does not bear evidence of forgery or alteration that is so apparent, or is not otherwise so irregular or incomplete as to call into question its authenticity;
"(2) The holder took the instrument under all of the following circumstances:
"(a) For value;
"(b) In good faith;
"(c) Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;
"(d) Without notice that the instrument contains an unauthorized signature or has been altered;
"(e) Without notice of any claim to the instrument as described in section 1303.36 of the Revised Code;
"(f) Without notice that any party has a defense or claim in recoupment described in division (A) of section 1303.35 of the Revised Code."
Although no longer specifically referenced in the statute, a payee can be a holder in due course. As stated in Official Comment 4 to the Uniform Commercial Code, "Former Section 3-302(2) stated: `A payee may be a holder in due course.' This provision was intended to resolve the split of authority under the N.I.L. It made clear that there was no intent to change the common-law rule that allowed a payee to become a holder in due course. See Comment 2 to former Section 3-302. But there was no need to put subsection (2) in former Section 3-302 because the split in authority under the N.I.L. was caused by the particular wording of N.I.L. § 52(4). The troublesome language in that section was not repeated in former Article 3 nor is it repeated in revised Article 3. Former Section 3-302(2) has been omitted in revised Article 3 because it is surplusage and may be misleading. The payee of an instrument can be a holder in due course, but use of the holder-in-due-course doctrine by the payee of an instrument is not the normal situation."
Therefore, we conclude that appellees, as payees of the checks issued by PPC, may be holders in due course if they meet the requirements of the statute. The undisputed evidence in the record is that appellees took the checks in return for services rendered, that they did so in good faith, that they had no notice of any defect in the instruments or any defense or claim, and that they had not had prior dealings with the rehabilitator when they took the checks. No obligor, maker, drawer, or acceptor with whom appellees dealt has asserted any defense, or made any claim to the checks. The liquidator has not asserted that appellees had notice of any defense or claim at the time they took the checks in payment. Thus, we conclude that appellees met the requirements of R.C.1303.32 and are holders in due course. As holders in due course, appellees enjoy the right to take the checks free from all claims to them and all defenses of any party to the instruments with whom the holders have not dealt with some exceptions that are not pertinent to this case. See R.C. 1303.35.
Because there is little case law interpreting the liquidation statutes and because R.C 3903.27 is structured almost identically to the 1938 amendments to the Bankruptcy Act, appellant urges this court to apply bankruptcy law to construe R.C. 3903.27 in such a way as to find the transfer of funds to be invalid against appellant. Section 70(d)(5) of the former Bankruptcy Act governed the avoidance of post-petition transfers and, as with the liquidation statute, contained the proviso that " `nothing in this title shall impair the negotiability of currency or negotiable instruments.' Bankruptcy Act of 1898, ch. 541, § 70,30 Stat. 544, 565, as amended at ch. 575, § 70(d)(5), 52 Stat. 840, 882 (1938), (repealed 1978)." The Bankruptcy Act was subsequently amended, and the specific protection relating to negotiable instruments has been omitted from the current code. Thus, current bankruptcy law is of little value in construing R.C. 3903.27, and the cases cited by appellant do not specifically address the effect of the proviso concerning impairment of negotiable instruments.
Appellant places heavy reliance on In re Plaza Hotel Corp., (Bankr.Ct.Cal. 1990), 111 B.R. 882, 888, for the proposition that a payee can be forced to return funds that it receives after the filing of a petition in bankruptcy to pay a check issued pre-petition and paid post-petition. However, Plaza Hotel was decided after the bankruptcy act was amended and the prohibition against impairing the negotiability of currency and negotiable instruments was removed. In addition, the payee in Plaza Hotel could not and did not claim holder in due course status as he was the debtor in bankruptcy's counsel who received his retainer pre-petition without disclosing that the payment was intended to be paid from post-petition revenues. Id. at 883-884. In addition, the retainer was in the form of a post-dated check which the court construed as powerful evidence of an intention to extend credit rather than to have a cash transaction. Id. at 887. The court then rejected the payee's argument that he received the retainer pre-petition, concluding that the transfer occurred when the check was cashed. Thus, Plaza Hotel is of little value to this case.
In Bank of Marin v. England (1966), 385 U.S. 99, 87 S.Ct. 274, another case cited by appellant, the United States Supreme Court applied equitable principles to hold that payment by a drawee bank of bankrupt depositor's checks after the date of filing of a voluntary petition for bankruptcy was not a transfer within the meaning of former Section 110(d)(5), Title 11, U.S. Code, and the bank was not liable to the trustee for the amount of checks paid, when at the time of payment the bank had no knowledge or notice of the bankruptcy proceeding. The Supreme Court noted that the payee could be liable for payment if he received a voidable preference or other voidable transfer. The Supreme Court decision only briefly mentions the possible application of the negotiability proviso, and because the payee had previously settled with the trustee before the appeal the Supreme Court never discussed whether the payee was a holder in due course or whether requiring the payee to disgorge the proceeds of the check would impair the negotiability of the checks.
In Rice v. Alpha Financial Group (C.A.9, 1987), 83 B.R. 8, a case not cited by the parties, the Ninth Circuit Court of Appeals looked at the amendments to the Bankruptcy Code and determined that the deletion of protection for holders of negotiable instruments was an intended modification of prior law. Therefore, the current Bankruptcy Code, Section 549, Title 11, U.S. Code, did not afford any protection to holders in due course of negotiable instruments, particularly in light of the deletion of the provision that "nothing in this title shall impair the negotiability of currency or negotiable instruments."
In light of these cases, if we are to derive any meaning from federal bankruptcy law in interpreting R.C. 3903.27(C) we find that it actually supports appellees' interpretation. Requiring a payee who is a holder in due course to disgorge the proceeds of checks that were issued before an order of rehabilitation was entered would impair the negotiability of a negotiable instrument. On these facts, the rehabilitator's action to have the transaction declared invalid, does not overcome appellees' status as holders in due course.
Based on the foregoing, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK, P.J., and DESHLER, J., concur.