**REYNOLDS et al. v. MAPLES.**

No. 14556.

United States Court of Appeals
Fifth Circuit.

June 23, 1954.

396

Ben F. Cameron, Charles B. Cameron, R. W. Thompson, Jr., Gulfport, Miss., V. W. Gilbert, O. Winston Cameron,

Meridian, Miss., for plaintiffs and appellants.

Luther Maples, Gulfport, Miss., M. M. Roberts, Hattiesburg, Miss., J. O. Moss, Darwin Maples, Lucedale, Miss., for appellee and cross-appellant.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

RUSSELL, Circuit Judge.

On May 4, 1951, for and in consideration of $1,000 cash in hand paid, Florian Maples granted to L. O. Murphy and C. B. Cameron a 24 day option to purchase certain described timber, agreeing to execute and deliver a warranty deed covering the timber to the Commercial National Bank, Laurel, Mississippi, "if and when the additional sum of $199,000.00, is deposited in said bank by the said L. O. Murphy and C. B. Cameron, on or before May 28, 1951."[1]

Murphy and Cameron went to the bank shortly after it opened on May 28th and displayed the contract to its president, Maddox, telling him that they were ready to complete the transaction. Prior to that time Cameron had contacted R. D. Sanders to make arrangements for the latter to furnish the necessary funds to finance the transaction. Sanders authorized Cameron to go to the Laurel bank on May 28th and draw a draft through the Deposit Guaranty Bank and Trust Company, Jackson, Mississippi, and have the Laurel bank telephone the Jackson bank which in turn would telephone him and he would authorize payment of the draft so that the money could be deposited in the Commercial National Bank on that day. Depending upon this arrangement, Cam-

[1] " * * * I hereby agree and bind myself to convey by warranty deed to L. O. Murphy and C. B. Cameron, all merchantable timber * * * which said warranty deed is to be executed and delivered to the Commercial National Bank, Laurel, Mississippi, if and when the additional sum of $199,000.00, is deposited in said bank by the said L. O. Murphy and C. B. Cameron, on or before May 28, 1951, it being agreed and understood that the said warranty deed and the sum of $199,000.00, above mentioned, shall remain on deposit in said bank for an additional fifteen days or less, during which time the said L. O. Murphy and C. B. Cameron shall examine the title to said land * * *, within said fifteen days additional time above mentioned, and which said income taxes plus the sum of $200,000.00 shall be the total price of said timber."

eron, or Maddox at his direction, drew a draft on Cameron through the Jackson bank. This draft, together with the option contract, was placed in the hands of Maddox, who was told that he could verify the authenticity of the draft by calling the Jackson bank. Maddox took possession of the draft with the understanding that Cameron would retain control of it until Maples delivered the deed to the bank and Cameron approved it. Cameron did not intend to release the draft for deposit until Maples presented the deed and it was compared with the option contract. At the suggestion of Maddox, verification of the draft was deferred until such time as the executed deed should be delivered to the bank. That afternoon at about 3:00 o'clock, Maples having failed to show up with the deed, Cameron requested that the draft be returned to him and he destroyed it. Thereafter, further negotiations were had with Maples in an effort to effect a purchase of the timber in accordance with the option. Maples took the position that the option expired by its own terms on May 28th upon the failure of the optionees to actually deposit the $199,000 in the Commercial National Bank on or before that date, and that he was under no obligation to consummate the sale.

By an instrument dated December 14, 1951, Murphy and Cameron attempted to sell, convey and quitclaim to Sam J. and W. N. Reynolds, appellants, the timber described in the option agreement of May 4th, together with the rights, terms and conditions set forth in the option. The sole consideration for this purported conveyance was $10 in cash paid to Murphy and Cameron. A collateral agreement was entered into among those parties which, inter alia, obligated the grantees therein, the two Reynolds brothers, to institute and prosecute a suit for specific performance of the option contract against Maples to establish title to the timber and to "recover all rights growing out of the contract." The profits resulting from the sale of the timber, if the suit should be successful, or the proceeds of any settlement of the litigation, were to be distributed, after the payment of specified expenses, 33⅓% to Charles B. Cameron and Ben F. Cameron as attorneys fees, 23% to Murphy and 23% to Cameron's wife, Dorothy Heideberg Cameron. The latter two amounts were to be reduced by sums sufficient to settle certain family debts. The remaining 20⅔% was apparently to be retained by appellants.

The foregoing facts, which were fully developed by affidavits, counter-affidavits and depositions, furnished the topography for the battle lines which were laid in the trial court. In view of the result reached by the court below, they are stated most favorably for appellants. Appellants sought specific performance of the option contract, damages and other related relief. In addition to denying that he was obligated to convey the timber to appellants or their grantors, Maples, appellee, denied that appellants were the real parties at interest and sought to implead Murphy, Cameron, Mrs. Cameron and Howard Cameron, a brother of Cameron who was to participate in the proceeds of the litigation as a creditor of Cameron, as the real parties at interest and indispensable parties. He alleged that appellants were being used merely as conduits in order to obtain diversity of citizenship upon which the jurisdiction of the court depended. By way of counterclaim, appellee sought to recover damages, actual and punitive, against appellants and the named third party defendants for slander of title to his property resulting from their alleged publication of the purported deed and collateral contract of December 14, 1951.

The court granted appellants' motions for summary judgment on the issues raised by the complaint and answer as to its jurisdiction and on the issues raised by the counterclaim. The counterclaim was dismissed. Appellee's motion for leave to serve the third party complaint was overruled and the motions of appellants and each of the named third party defendants to dismiss the third

party complaint were sustained. The court held, however, that the record failed to sustain appellants' claim that Murphy and Cameron had exercised the option in accordance with the agreement and granted appellee's motion for summary judgment on that issue. Judgment was entered dismissing the complaint.

The court held that as a matter of law the facts disclosed by the record do not support appellants' theory that acceptance of the option was effected by Murphy and Cameron through their conditional tender of the draft to the bank on May 28th. It found that the arrangement made between Cameron and Sanders was adequate to insure deposit of the money on that date but that Murphy and Cameron were not ready, willing and able to deposit the money until the deed was first handed over to them to be attached to the draft. It viewed the contract as requiring appellee to execute and deliver the deed only after the money was actually deposited. Since it was never deposited, the option expired by its own terms. For a number of reasons stated in their brief, appellants insist that this ruling is erroneous. These propositions, though stated variously, converge upon a common point; namely, that the obligation of the optionees to deposit the money and that of appellee to execute and deliver the deed were mutually dependent and required simultaneous action by the parties.

We agree with the trial court that the language of the option did not obligate appellee to meet the optionees at the bank. His obligation to perform arose only "if and when" the money was deposited. There is no question here of whether a proper tender was made or whether appellee's failure to appear at the bank on the crucial date constituted an anticipatory breach of the option agreement such as would excuse a tender. The contract sought to be enforced was not a contract for sale where under certain circumstances concurrent performance will be presumed to have been intended in the absence of an express provision to the contrary. Appellee, under the express terms of the option, was required to do nothing until the optionees signified their acceptance by depositing the money. The mode of acceptance was agreed to by the parties and appellee had a right to insist upon it. The apparent ability of the optionees to deposit the money, conditioned upon their unilateral requirement that appellee first execute and deliver the deed, unaccompanied by an actual deposit, was not substantial compliance, in fact, it was not compliance at all, with the terms of the option.

An option, when supported by a valid consideration, constitutes a continuing offer to sell which is irrevocable during the period specified therein. Until it is exercised it contains no elements of a sale. Such a contract is necessarily unilateral, since it binds the optionee to do nothing but grants him the right to accept the offer or not, as he may choose, within the time and in the manner specified. When he accepts the offer in the prescribed manner and before expiration thereof, the contract for sale is complete and is binding upon both parties. It is incumbent upon the optionee to exercise the option in the manner provided in the contract and, unless such requirements are waived, his failure to do so, or his attempt to exercise it in another manner, is inoperative to form a binding contract for sale. Murphy and Cameron were unwilling to deposit the money as required by the option until such time as appellee met their condition of first delivering the deed. In imposing this requirement the optionees either misconceived their rights under the option or sought to enlarge them. In either and all events, they were not ready, willing and able to, and did not, accept the offer before expiration. A contract for sale was never completed and there is none to enforce.

We are invited to indulge in a discussion of grammar and punctuation and reach the conclusion that appellee's agreement to deliver the deed "if and when the additional sum of $199,000.00,

is deposited in said bank * * *, on or before May 28, 1951" actually means that he was to execute and deliver the deed simultaneously with the making of the deposit of the money. The option agreement does not say this and we can not, by definition of words which are clear and unambiguous in their context, rewrite the contract for the parties.

Other matters are urged by appellants, but we find them without merit. The requirement that the money be actually deposited by the optionees if the option was to be exercised was not met by the arrangements which we have described, therefore, the option expired on May 28th and the contractual relationship between the parties was at an end.

■■■■ The remaining points for consideration are presented by Maples as cross-appellant, complaining of the rulings of the trial court which dismissed his counterclaim and denied his motion to implead the third party defendants. An alternative claim that the court was without jurisdiction has been abandoned in view of our ruling on the main appeal. As to the first of these contentions, the record shows without dispute that the appellants acted in good faith and upon advice of able counsel in asserting their claim to title. In this connection, the following statement of the Supreme Court of Mississippi in Smith County Oil Co. v. Jefcoat, 203 Miss. 404, 33 So.2d 629, 633, is appropriate:

"* * * we are unable to say that the claim of the said defendant was asserted without probable cause, or with a wilful or malicious purpose to injure and damage the appellees, since the evidence does not sustain the theory of fraud or show any malice, and, therefore, there can be no recovery of damages on account thereof."

Other than the unsupported allegations of the counterclaim, there is nothing in the record to show that appellants did not have probable cause to assert their claim or that they were motivated by malice against Maples, whom they did not know personally. All of the evidence is to the contrary. Generally, on a motion for summary judgment all of the well pleaded facts of the complaint, or more appropriate here, the counterclaim, will be taken as true. However, as we stated in Surkin v. Charteris, 5 Cir., 197 F.2d 77, 79, "The sufficiency of the complaint does not control and, although the burden is on the moving party to demonstrate clearly that there is no genuine issue of fact, the opposing party must sufficiently disclose what the evidence will be to show that there is a genuine issue of fact to be tried." The depositions of all the interested parties, including those of the proposed third parties, are in the record and, as to this issue, there is not a single question of fact raised. Under these circumstances we think that the motion for summary judgment on the counterclaim was properly granted. Cf. Dyer v. McDougall, 2 Cir., 201 F.2d 265.

Rule 13(h), Federal Rules of Civil Procedure, Title 28 U.S.C.A., provides for the bringing in of third parties whose presence is required for the granting of complete relief in the determination of a counterclaim if jurisdiction of them can be obtained and their joinder will not deprive the court of jurisdiction. Where diversity of citizenship is the sole ground of jurisdiction, as here, and the parties sought to be brought in, when aligned in accordance with their real interests, would deprive the court of jurisdiction, the requirements of Rule 13(h) can not be satisfied. The four parties sought to be impleaded are citizens of Mississippi, as is Maples, and their joinder would deprive the court of jurisdiction. The court did not err in refusing to permit the additional parties to be impleaded.

Judgment affirmed.