337 So.2d 698 (1976)
D.G. ROBINSON
v.
MARTEL ENTERPRISES, INC., et al.
No. 48844.
Supreme Court of Mississippi.
September 21, 1976.
*700 Stone & Graham, W. Welborn Johnson, Columbus, for appellant.
Patterson & Patterson, Aberdeen, Tubb, Stevens & Morrison, West Point, James H. Mathis, Corinth, for appellee.
Before GILLESPIE, C.J., ROBERTSON and LEE, JJ., and MIKE CARR, Commissioner.
MIKE CARR, Commissioner for the Court:[1]
On June 5, 1972, Martel Enterprises, Inc., grantor, entered into a contract with D.G. Robinson, grantee, for a "Lease & Option to Purchase" 926.83 acres of land in Clay County, Mississippi. The lease provided for annual rental payments plus interest and gave Robinson an option to purchase the property for a purchase price of $200 per acre.
On July 2, 1974, a declaration was filed in the Circuit Court of Clay County, styled "Martel Enterprises, Inc. v. D. Glenn Robinson," demanding judgment against Robinson for $12,758.66, alleging that the yearly rental payments plus interest under the lease were in default.
On October 3, 1974, D.G. Robinson filed this suit in the Chancery Court of Clay County, seeking specific performance of his option to purchase under the "Lease & Option to Purchase" contract, or, in the alternative, damages for a breach of the contract. Attached to and made a part of the bill of complaint filed herein was a copy of the "Lease & Option to Purchase," as Exhibit A, and a copy of the "Acceptance of Option" as Exhibit B. The "Acceptance of Option" was dated December 6, 1973, and Paragraph 4 of the "Lease & Option to Purchase" provided as follows:
4. The grantee herein reserves unto himself an option to purchase said property from the grantor or its assigns or successors in office, the aforementioned described property for a purchase price of $200.00 per acre, said option to be exercised before December 31, 1973, by giving of notice to the grantee herein at its address aforementioned by U.S. postage prepaid mail, at least 30 days in advance of the exercising of said option.
By agreement of all the parties, the circuit court action was transferred to the Chancery Court of Clay County and consolidated with this suit in order that all the disputed issues might be adjudicated together.
Martel Enterprises, Inc., and W.R. Rhoades filed an answer to the Bill for Specific Performance, and all four defendants filed demurrers to said bill. Briefs and oral arguments were presented by counsel, and the Chancellor entered a decree finding that the option contract provided that the notice to exercise the option must be given by December 1, 1973, that the notice provision was not ambiguous, that the bill and exhibit "B", being the notice of acceptance of the option, showed on its face that the notice was not timely given, and that time was of the essence of the option by the very nature of the contract. The Court further found that since said option was not properly exercised, the complainant was not entitled to specific performance and could not be entitled to damages or the other relief *701 sought in the bill. Therefore, the court sustained the defendants' demurrers in their entirety and dismissed the bill with prejudice, but provided that said dismissal would not affect the suit of Martel Enterprises, Inc., originally filed in the Circuit Court of Clay County, seeking recovery of rent due under the contract.
From the chancellor's decree sustaining appellees' demurrers, the appellant has prosecuted this appeal, assigning as error the chancellor's action in sustaining appellees' demurrers.
A demurrer to a complaint raises an issue of law as to the legal sufficiency of the facts in the complaint to state a cause of action. Therefore, for the purpose of a hearing on the demurrer, all well-pleaded facts must be taken as true. Griffith, Mississippi Chancery Practice, § 286 (2d ed. 1950).
Appellant alleged in his bill of complaint and contended in his brief that paragraph 4 of the "Lease & Option to Purchase" is vague, ambiguous and subject to several interpretations. A portion of paragraph 4 requires notice to be given "to the grantee herein." Since appellant is the grantee, on its face, this paragraph required Robinson to give notice to himself of his intent to exercise the option. Appellees contend that the use of "grantee" was a mere typographical error and that the court should read the contract as saying "grantor."
A written contract should be construed according to the obvious intention of the parties, notwithstanding clerical errors or inadvertent omissions therein, which can be corrected by perusing the whole instrument. If an improper word has been used or a word omitted, the court will strike out the improper word or supply the omitted word if from the context it can ascertain what word should have been used. 17 Am. Jur., Contracts, § 280.
The general rule in interpreting contracts is that the court will look only to the "four corners" of the instrument to ascertain and give effect to the intention of the parties. In Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1954), the Court said:
"The intention of the parties must be collected from the whole agreement, and every word therein must be given effect, if possible, and be made to operate according to the intention of the parties." It is also well settled that the words of a contract should be given a reasonable construction, where that is possible, rather than an unreasonable one; and the court should likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. 75 So.2d at 65.
Paragraph 5 of the "Lease & Option to purchase" provides that "if the grantee herein decides to exercise his option, that upon the giving of his notice and the tendering of consideration, the grantor will waive the lease or rental fee... ." The contract was between Martel Enterprises, Inc., lessor/grantor, and D.G. Robinson, lessee/grantee. Paragraph 4 provides "said option to be exercised before December 31, 1973, by giving of notice to the grantee herein at its address aforementioned by U.S. postage prepaid mail at least 30 days in advance of the exercising of said option." (Emphasis added). We feel that a reasonable interpretation, rather than an unreasonable one, should be applied in interpreting this contract. The use of the pronoun "its" in paragraph 4 with reference to the address of the party to whom notice is to be given evidences the fact that notice was to be given to the corporation, Martel Enterprises, Inc., the grantor; and that the use of the word "grantee" was a clerical error. Also, we think that paragraphs 4 and 5 of the contract should be construed together, and when so done, it is apparent that the parties intended that the notice was to be given to the grantor. No apparent purpose would be served if Robinson gave notice to himself of his intent to exercise the option. With the word "grantee" in the clause, it has no meaning or purpose, but when the word "grantor" is substituted, the clause becomes clear and its meaning readily ascertainable.
*702 Appellant also contends that paragraph 4 is ambiguous because it required Robinson to give 30 days notice prior to the formation of his "mental intent" to purchase the property. There is no reference to "mental intent" in paragraph 4 or anywhere else in the contract. The clear and unambiguous meaning of the contract was that the option was to be exercised before December 31, 1973, upon written notice at least thirty days in advance of that date. Robinson did not have until December 31, 1973, in which to form his intention to exercise the option; instead, he had to form such an intention and notify appellee of his decision at least thirty days before December 31, 1973.
The appellant further alleged in his bill of complaint that the defendants were aware that complainant was exercising his option to purchase the property as early as the summer of 1973; that the defendants understood and acquiesced in the fact that the complainant was to purchase the property; that the defendants had knowledge of this contemplated purchase and the exercising of the option by various other means; and that at no instance had the defendant Roy Rhoades, or Martel Enterprises, Inc., refused to honor the contract until such time as payment was tendered unto said defendants.
In Reynolds v. Maples, 214 F.2d 395 (5th Cir.1954), the Court applied Mississippi law in a suit for specific performance of an option contract to purchase timber wherein the purchase money was to be deposited in the named bank on or before a certain date. The optionee conditionally tendered the money to the bank, but would not deposit it until the deed was first handed over to him. The optionee proved that he was able to deposit the money and urged that he had, therefore, exercised his option. The Court failed to agree, and held as follows:
An option, when supported by a valid consideration, constitutes a continuing offer to sell which is irrevocable during the period specified therein. Until it is exercised, it contains no elements of a sale... . When he accepts the offer in the prescribed manner and before expiration thereof, the contract for sale is complete and binding upon both parties. It is incumbent upon the optionee to exercise the option in the manner provided in the contract and, unless such requirements are waived, his failure to do so, or his attempt to exercise it in another manner, is inoperative to form a binding contract for sale. (Emphasis supplied) 214 F.2d at 398.
The allegations of Robinson hereinabove as to what appellees were aware of, what they understood and acquiesced in, what they had knowledge of, etc., are no more availing to appellant than the proof of ability to pay in the Reynolds case, supra. This Court is of the opinion that such allegations are not sufficient to raise the question of waiver but are mere conclusions of the pleader, and we have held in Ladner v. Deposit Guaranty National Bank, 290 So.2d 263 (Miss. 1973), that a demurrer does not admit mere recitals of conclusions, either in fact or of law. Waiver is a conclusion of law, and the facts constituting such excuse must be pleaded. 28 Am.Jur.2d, Estoppel and Waiver § 172.
The findings of the chancellor that the contract provided that the notice to exercise the option had to be given by December 31, 1973, and that time was of the essence of the contract are well supported in the law. Both the requirement to exercise the option within a given period and to give notice of the intent to exercise such option are common provisions in options. The annotation in 72 A.L.R.2d 1127 (1960) discusses notice requirements contained in option contracts as follows:
As a general proposition, an option contract is of such a nature that time is generally regarded as of the essence thereof, even in equity. The rule applies to contracts for the purchase and sale of land and leases containing an option to purchase the land involved.
In accordance with these principles it has been held in a number of cases that the time prescribed in a real estate contract containing an option to purchase the land *703 involved, for giving notice, prior to the expiration of the option, of the optionee's intention to exercise the option, is of the essence, and that upon the optionee's failure to give timely notice the option expires.
The case of Barham v. Davenport, 247 N.C. 575, 101 S.E.2d 367 (1958), is cited in the above annotation, and this case is in point with the case at bar. The Barham case was also a suit for specific performance of an option to purchase real estate and involved a lease which gave the lessee a right to purchase certain property on June 1, 1953, or at any time thereafter, if during a renewal period of the lease. The lessee had to give notice to the lessor of the lessee's election to exercise the option to purchase at least ninety days prior to the first day of June, 1953. The lessee renewed his lease, and then gave notice of his election to exercise the option to purchase on May 16, 1957. The lessor refused to convey the property, and in lessee's suit for specific performance, the trial court sustained the lessor's demurrer, and this action was affirmed by the North Carolina Supreme Court on the ground that the complaint showed upon its face that the lessee failed to give notice of his election to exercise the option within the time limited. Plaintiff's contention that the provisions relating to the option were ambiguous and contradictory and should be interpreted favorably to the tenant to mean that he had the right to purchase by giving notice of intention ninety days before expiration of any renewal period was rejected by the Court in view of the fact that while the lease conferred upon the tenant an option to purchase at any time during a renewal period, nevertheless, it stated in plain language that such election was to be made and notice thereof given at least ninety days before June 1, 1953.
In Lewis v. Woods, 4 Howard 86 (Miss. 1839), in a suit for specific performance by the purchaser for the execution of a deed, it was held:
It is a universally acknowledged rule that a court of equity will not decree a specific performance of a contract, when the party applying for it has omitted to execute his part of the agreement by the time appointed for that purpose... . 4 Howard at 87
The Court further stated in the same case that:
A party cannot be permitted to violate his contract and wait until he sees that his bargain will be profitable, and then invoke the aid of a Court of Chancery to have it executed. Both time and circumstances are to be taken into consideration, for time may be of the very essence of a contract, otherwise a party might select his own time for performance. 4 Howard at 88.
As a general rule, time is of the very essence of an option contract. Poole v. McCarty, 229 Miss. 170, 90 So.2d 190 (1956); 17 Am.Jur.2d, Contracts § 335 (1964). When the option contract calls for giving notice of the grantee's intention to exercise the option, a great majority of courts have held that this provision is of the essence, and that upon failure to give timely notice, the option expires. 72 A.L.R.2d 1127 (1960); 71 Am.Jur.2d, Specific Performance § 145 (1973).
In Mason v. Payne, 47 Mo. 517 (1871), the Missouri Court dealt with a case involving a contract in which the lessee had the option to purchase certain premises any time within five years, but was required to give thirty days' notice of his intention to so purchase. The lessee gave notice two days before expiration of the five years, and the lessor refused to convey. The lessee's contention that the notice was seasonable since it was within the five years was dismissed by the Court in the following language:
But the notice must have reference to some future time or event or obligation. It cannot mean thirty days before he forms an intention or makes an election to purchase, for it is a notice of such intention or election already formed. It must mean thirty days before the plaintiff is entitled to purchase, or the requirement has no significance, and he is not entitled to purchase after the five years. *704 But the plaintiff objects that we deduct thereby thirty days from the time within which he may make his election, and thereby so far defeat the contract. This objection would be reasonable if the contract gave the plaintiff five years within which to form his intention; but instead of that it gives him thirty days less than five years, by giving only five years to purchase and requiring thirty days' notice of his intention to do so. 47 Mo. at 519.
Appellant has relied heavily upon the case of Albachten v. Miller, 216 Or. 379, 339 P.2d 427, 72 A.L.R.2d 1122 (1959). This case represents the minority holding in cases of this nature and is distinguished from the present case in several particulars. The contract therein provided that the grantee had the right to purchase certain property on October 1, 1955, but not prior thereto. The contract also required not less than thirty days' notice in writing of the grantee's intention to exercise the option. The grantee attempted literal compliance with the notice requirement by mailing written notice on August 25, 1955, but this letter was never received by the grantor. Subsequently, a second letter was sent to grantor's attorney on September 9, 1955, reciting that the notice provided for in the contract had been sent on August 25th. Tender of payment was made on October 1, 1955, and was refused by the grantor.
The option contract in Albachten was entered into at the same time the grantee had purchased adjoining lands from the grantor, and the two transactions were handled as one deal. The Court found that this property was part of a transaction which included another tract of land which had previously been purchased by the purchaser from this same seller. It was undisputed that the purchaser would never have purchased one tract without the other. The parties had considered the separate properties as all part of the same transaction throughout their dealings. The Court further found as a matter of fact that neither party intended for time to be of the essence of the contract, and that the notice provision was only a collateral matter and should be "weighed in connection with such factors as the nature of the particular provision, good faith, and prejudice." 339 P.2d at 429. In arriving at its decision, the Oregon Court said: "The option before us is unique. Apt, controlling authority is hard to find. We feel general equitable principles must be resorted to ..." 339 P.2d at 429. The Court then undertook to balance the equities of the case.
Even though this Court has not to this date dealt specifically with a notice requirement in an option to purchase, nevertheless, we have decreed strict compliance with the terms and provisions of option contracts. See Poole v. McCarty, 229 Miss. 170, 90 So.2d 190 (1956). To allow Robinson to ignore such a notice requirement or substitute his own date and manner for giving notice of his intention to exercise his option is tantamount to this Court's making a different contract between the parties, which we cannot do. If the terms of options involving property rights are not strictly construed, Pandora's Box is opened for serious property title problems to develop. It is for this compelling reason that this Court must align itself with the greater weight of legal authority holding that time is of the essence with regard to such notice provisions. 72 A.L.R.2d 1127 (1960): 71 Am.Jur.2d, Specific Performance § 145 (1973).
Appellant alleged in his bill of complaint that he had fully performed all the terms, conditions, duties, and obligations of the contract, and he attached as Exhibit "A" a copy of the "Lease & Option to Purchase," paragraph 4 of which required that notice to exercise the option be given by December 1, 1973. Appellant also attached as Exhibit "B" his "Acceptance of Option" which was dated December 6, 1973. Finding that the exhibits were controlling over the allegations of the bill of complaint, the chancellor ruled that the notice was not timely given. We find no error in this ruling. When an exhibit is made the basis on which relief is sought, the contents of the exhibit control over allegations in the bill of complaint. Mississippi State Highway Com. v. Cohn, 217 So.2d 528 (Miss. *705 1969); Roberts v. James Manufacturing Co., 197 So.2d 808 (Miss. 1967); Griffith, Mississippi Chancery Practice § 192 (2d ed. 1950). See also Mississippi Code Annotated section 11-5-15 (1972), which provides: "Exhibits filed with a bill, as part of it, shall be considered, on demurrer, as if copied in the bill."
Appellant chose to stand on his pleading rather than amend his bill of complaint. He makes no claim that he mailed notice of his election to exercise the option by December 1, 1973. After a careful study of the pleadings and exhibits in this case, as well as the governing principles of law, we conclude that the "Lease & Option to Purchase" is clear and unambiguous as it is written; that it precisely demands written notice by December 1, 1973, of an intent to exercise the option; that in so doing, the option itself makes time of the essence of the contract; and that it expired on failure of compliance. No inferences, deductions, or interpretations are necessary. To hold otherwise would create a distinction without a difference.
The chancellor was correct in sustaining the demurrers.
AFFIRMED.
All Justices concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion adopted as the opinion of the Court.