BRENT LIQUID TRANSPORT, INC., Brent Towing Company, Inc., Brent Marine Transportation, Inc., Lea Brent and Howard Brent, Plaintiffs,

v.

GATX LEASING CORPORATION, Defendant.

No. GC85–338–NB–O.

United States District Court, N.D. Mississippi, Greenville Division.

Nov. 19, 1986.

J. Robertshaw, Greenville, Miss., for plaintiffs.

W. Wayne Drinkwater, Greenville, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause came before the court on the following motions:

(1) the defendant's motion for partial summary judgment on the issues of the purchase options and termination of the bareboat charter/lease agreement;

(2) the plaintiffs' cross-motion for partial summary judgment;

(3) the defendant's motion to dismiss the plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act or alternatively for partial summary judgment on those claims; and

(4) the plaintiffs' motion for leave to file a second amended complaint.

Having been fully advised in the premises, the court is now in a position to rule on these motions.

## I. Introduction

The plaintiffs brought this action for a declaratory judgment as to the right to exercise options to purchase eight inland river tank barges under a bareboat charter/lease agreement. In addition, the plaintiffs seek treble damages for the defendant's alleged violation of the Racketeer Influenced and Corrupt Organizations Act. The defendant filed a counterclaim alleging that plaintiff Brent Liquid Transport, Inc. failed to give timely written notice of its intent to exercise its option to purchase certain barges and breached the charter/lease agreement by refusing to return the barges at the end of their lease terms, resulting in termination of the agreement.

## II. Parties

Plaintiff Brent Towing Company, Inc. (hereinafter referred to as "Brent Towing") is an inland river towing company which agreed to purchase eight river tank barges from St. Louis Ship Division of Pott Industries, Inc. under a construction contract dated February 13, 1973. The contract provided for completion and delivery of the first four barges in 1973 and the remaining four barges in 1974. Brent Towing discussed the financing of the barges with commercial lenders and defendant GATX Leasing Corporation (hereinafter referred to as "GATX"), a lessor of maritime equipment. On April 17, 1973, GATX offered to buy the first four barges from St. Louis Ship Division of Pott Industries, Inc. and lease them to Brent Towing for twelve years with the option to purchase at the end of the lease term. Brent Towing formed Brent Liquid Transport, Inc. (hereinafter referred to as "Brent Liquid") to lease and operate the barges. Brent Towing assigned its right to purchase the barges to GATX. On September 24, 1973 Brent Liquid and GATX executed a bareboat charter/lease agreement and a schedule describing the first four barges (hereinafter referred to as the "schedule barges"). Lea Brent and Howard Brent, as well as Brent Towing, guaranteed Brent Liquid's performance under the charter/lease agreement.

On March 22, 1974, GATX offered to buy the last four barges from St. Louis Ship Division of Pott Industries, Inc. and lease them to Brent Liquid for twelve years with the option to purchase at the end of the lease term. Brent Liquid and GATX executed a supplemental schedule for the lease of the last four barges (hereinafter referred to as the "supplemental schedule barges") on May 6, 1974. The supplemental schedule incorporates the terms and conditions of the charter/lease agreement.

## III. Terms of the Bareboat Charter/Lease Agreement, Schedule, and Supplemental Schedule

The schedule sets forth the lease term for each of the schedule barges as follows:

2. *Term:*
   The Term of the Lease of each vessel shall be twelve (12) years commencing on the date such vessel is accepted by Lessee and made subject to this Lease.

The supplemental schedule similarly defines the lease term of each of the supplemental schedule barges:

4. *Term:*
   The term of the Lease of each Vessel shall be twelve (12) years commencing on the date such Vessel is accepted by Lessee and made subject to this Lease and Supplemental Schedule.

The Lease (section 13) provides the option, with respect to each vessel, to purchase or renew the term in accordance with the terms and conditions set forth in the schedules:

[Schedule]

7.A) *Lessee's Option to Purchase:*
   At the expiration of the lease term (as defined in Section II of this Lease Schedule) Lessee shall have the right to purchase all but not less than all the Vessels then subject to this Lease for an amount equal to 30.0% of their original cost.

   In the event that Lessee elects to exercise the option set forth above, Lessee shall give Lessor written notice of its intent at least 180 days prior to the end of the lease term.

**[Supplemental Schedule]**

10.A  *Lessee's Option to Purchase:*

At the expiration of the lease term (as defined in Section 4 of this Supplemental Schedule), Lessee shall have the right to purchase all but not less than all the Vessels then subject to this Lease and Supplemental Schedule for an amount equal to 30.0% of their original costs.

In the event that Lessee elects to exercise the option set forth above, Lessee shall give Lessor written notice of its intent at least 180 days prior to the end of the lease term.

## IV.  Notice Deadlines

Under the charter/lease agreement and schedules, the lease terms began at the time Brent Liquid accepted each barge. However, GATX's internal memos prior to litigation designate the date of GATX's purchase payment for each barge as the beginning of each term. Although the plaintiffs acknowledge the express language of the lease term provisions, they refer to the dates in GATX's memos. In its supporting briefs GATX clarifies that the lease and schedules clearly provide for the terms to begin upon Brent Liquid's acceptance of the barges.

Brent Liquid accepted the schedule barges on September 27, October 15, October 29, and November 10, 1973. Under the option provision of the schedule, Brent Liquid has "the right to purchase all but not less than all the Vessels then subject to this Lease." In construing the plain language of the option, the court finds that the exercise of the purchase option contemplates the purchase of all four schedule barges, and that the deadline for giving written notice of intent to exercise the option was 180 days before expiration of the lease term of the first barge. The lease term expired on September 27, 1985 and the notice deadline was March 31, 1985. GATX asserts that even if Brent Liquid had the right to purchase only the last schedule barge, written notice would have been due on May 14, 1985. The respective

dates cited by the plaintiffs are April 12 and June 12, 1985. The court rejects these dates but notes that Brent Liquid did not give written notice until July 19, 1985, at which time all notice deadlines for the schedule barges had expired.

## V.  Notice of Brent Liquid's Intent to Exercise Purchase Options

The plaintiffs contend that Brent Liquid intended to buy the eight schedule and supplemental schedule barges at the option price prior to any notice deadlines and that GATX had actual notice of Brent Liquid's intent. The plaintiffs rely on phone conferences between Dick Voth, Brent Liquid's comptroller, and GATX representatives as evidence of GATX's knowledge of Brent Liquid's intent to exercise the purchase options.

The following facts are undisputed. On March 22, 1985, before any notice deadline, Voth telephoned Jackie Jansen, an employee in GATX's contract administration department, to negotiate a single financing arrangement for the purchase of all eight barges at a total option price. Voth proposed either accelerating the lease terms of the supplemental schedule barges or extending the lease terms of the schedule barges. Jansen told Voth that a representative of GATX would get back in touch with him regarding his inquiry. However, Brent Liquid received no response from Voth's initial call, and on May 17, 1985, Voth telephoned Loray Walker, GATX's contract administrator, requesting an early buy out of all eight barges before July, 1985. Walker told Voth that GATX's Equipment Management would contact him during the week of May 20, 1985. Walker referred the inquiry to Marc Francis, a GATX employee responsible for contract negotiations.

Francis made inquiries into Brent Liquid's position in the industry and the fair market value of barges comparable to the schedule barges. Francis calculated GATX's potential gain of $650,742.00 in the event Brent Liquid failed to exercise its option to purchase the schedule barges. On May 23, 1985 Francis telephoned Voth

who again proposed a single financing package for the purchase of the eight barges. Francis did not instruct Voth of Brent Liquid's contractual duty to give written notice of its intent to exercise the purchase options. However, he indicated that there should be no difficulty in reaching an agreement in view of Brent Liquid's credit record and at no time refused to consider Voth's financing proposals. Francis waited until the final notice deadline for the last schedule barge lapsed before calling Voth to open negotiations. During a phone conference on July 18 or 19, 1985, Francis informed Voth that Brent Liquid had missed the notice deadlines and had lost the option to purchase the schedule barges. Voth responded by expressing Brent Liquid's intent to buy the barges at the 30% option price regardless of the notice requirement.

On July 19, 1985, Brent Liquid sent GATX a mailgram:

Confirming our several telephone discussions over the past several months, Brent Liquid Transport, Inc., plans to purchase vessels currently under charter agreement dated September 24, 1973.

GATX mailed a response to Brent Liquid stating that Brent Liquid's written notice was untimely and the option to purchase the schedule barge had expired.

## VI. Written Notice Requirement

The charter/lease agreement and schedules expressly require Brent Liquid to give written notice of intent to exercise the purchase options. The plaintiffs complain that Voth was not aware of the written notice requirement during negotiations. GATX admits that neither Francis nor any other representative of GATX advised Voth of the notice requirement prior to the notice deadlines. However, GATX contends that it had no duty to remind Brent Liquid of the notice provision. The plaintiffs maintain that the phone conferences constitute oral notice of intent since there could be no reason, other than purchase of the barges, for Voth's inquiry into a single financing package. GATX argues that it was unaware of Brent Liquid's intent, if any, and

that Voth did not give oral notice of intent until the final phone conference on July 18 or 19, 1985.

The charter/lease agreement expressly provides that the parties' rights and obligations shall be governed by the laws of California, where GATX is headquartered and where payments were made. In Mississippi, the parties' agreement to apply the law of California is enforceable. *See Union Planters National Leasing, Inc. v. Woods,* 687 F.2d 117, 119 n. 1 (5th Cir. 1982). In any event, California law is indistinguishable from the law of Mississippi, with regard to option contracts. In an action for specific performance of a purchase option, a California appellate court held that the time for giving notice of intent to exercise the option is of the essence. *Rosenaur v. Pacelli,* 174 Cal. App.2d 673, 345 P.2d 102, 105 (Dist.Ct.App. 1959) (an option is an offer which expires by its own terms if not accepted within the prescribed time). California law accords with the law in Mississippi in adhering to the majority rule:

As a general rule, time is of the very essence of an option contract. *Poole v. McCarty,* 229 Miss. 170, 90 So.2d 190 (1956), 17 Am.Jur.2d, *Contracts* § 335 (1964). When the option contract calls for giving notice of the grantee's intention to exercise the option, a great majority of courts have held that this provision is of the essence, and that upon failure to give timely notice, the option expires. 72 A.L.R.2d 1127 (1960); 71 Am.Jur.2d, *Specific Performance* § 145 (1973).

*Robinson v. Martel Enterprises, Inc.,* 337 So.2d 698, 703 (Miss.1976). The lease in *Robinson* prescribed the deadline for exercising the purchase option and expressly required written notice of intent within a certain time. The written notice was five days late. The court enforced the notice provision and held that failure to give timely written notice defeated the lessee's right to exercise the purchase option. *Id.* at 704. Like the plaintiffs in the instant action, the lessee in *Robinson* alleged that the lessors were aware of the lessee's contemplated

purchase prior to the written notice deadline. *Id.* at 702. The court rejected such a conclusory allegation and concluded that the terms of the option must be strictly construed:

> To allow Robinson to ignore such a notice requirement or substitute his own date and manner for giving notice of his intention to exercise his option is tantamount to this Court's making a different contract between the parties, which we cannot do.

*Id.* at 704.

GATX asserts that time was of the essence, with respect to the written notice provision, and thus, Brent Liquid lost the option to purchase the schedule barges in failing to give timely written notice. On the contrary, the plaintiffs contend that the time for giving written notice was not of the essence and that GATX is estopped from asserting the notice requirement.

The plaintiffs rely upon only an Oregon case in which the court resorted to equitable principles. *Albachten v. Miller,* 216 Or. 379, 339 P.2d 427 (Or.1959). In *Albachten,* the plaintiff bought a tract of land from the defendant at the same time the parties entered into a lease with an option to purchase adjoining property. The plaintiff in good faith attempted literal compliance with the notice provision in the lease by mailing a notice which the defendant never received. The Mississippi Supreme Court in *Robinson* noted that *Albachten* represents the minority view and is distinguishable. 337 So.2d at 704. It was undisputed that if the plaintiff had not been given the option to purchase the leased property, he would not have purchased the adjoining tract of land. 339 P.2d at 428–29. Moreover, the purpose of the notice provision was merely to give the lessor reasonable time to remove his cows from the leased property. *Id.* at 429.

The plaintiffs characterize *Albachten* as an analogous case. The purpose of the notice provision in this action is to give GATX sufficient time before the end of the lease terms to arrange an alternative disposition of the barges. Yet, the plaintiffs argue that the notice provision is merely a collateral matter and only a pretext for GATX to gain the difference between the option price and fair market value of the schedule barges in the sum of $650,742.00.

■ The plaintiffs complain that enforcement of the notice requirement will result in forfeiture of Brent Liquid's charter payments in the sum of $1,250,860.00, plus interest. It is the plaintiffs' position that Brent Liquid acquired a beneficial ownership interest or equity in the schedule barges. Yet, the plaintiffs cite no authority in support of the argument that the charter/lease agreement is more in the nature of a sale than a lease. In fact, Brent Liquid's lease payments were lower than installment sale or loan payments. It is undisputed that Brent Liquid and GATX entered into a lease for tax advantages. The court finds that the parties intentionally structured the agreement as a lease and that Brent Liquid had only an option to purchase the barges.

The issue for the court's consideration is whether equitable relief is appropriate in this action to avoid a forfeiture.

> Option contracts do not come within the equitable rule against forfeiture, inasmuch as failure to comply strictly with the conditions of the option deprives no party of any right and abrogates no contract.

17 Am.Jur.2d *Contracts* § 60 at 396 (1964). California and Mississippi follow the general rule:

> The rule is well recognized that equity will not relieve against a forfeiture in case of default of performance due to inadvertence, neglect, or ignorance to which [the] lessor in no way contributed.... Equity will not relieve against mere forgetfulness and will not intervene where there is no fraud, accident or mistake on account of which the lessee neglected to avail himself of the option.

*Koch v. H & S Development Co.,* 249 Miss. 590, 163 So.2d 710, 727–728 (1964), *cited in Simons v. Young,* 93 Cal.App.3d 170, 155 Cal.Rptr. 460, 470 (Ct.App.1979).

GATX maintains that Brent Liquid's failure to give timely written notice was due to Brent Liquid's ignorance or neglect. It is undisputed that GATX at no time attempted to prevent Brent Liquid from giving timely written notice and never advised Brent Liquid that GATX would disregard or waive the notice provision. The plaintiffs argue that Brent Liquid reasonably relied upon Francis' representations that a single financing package could be arranged. The question is whether Brent Liquid would have delayed giving written notice pending negotiations if Voth had been aware of the notice requirement. After Francis notified Voth that the notice deadlines had lapsed, Brent Liquid immediately gave written notice of intent to exercise the purchase option. Therefore, the court finds that Brent Liquid failed to give timely written notice as a result of its own willful ignorance. The Mississippi Supreme Court in *Koch* held that ignorance is willful "when the person neglects the means of information which ordinary prudence would suggest." 163 So.2d at 728. *See Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 105 (9th Cir.1960), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960). The court in *Hampton* held:

> The doctrine of equitable estoppel does not erase the duty of due care and is not available for the protection of one who has suffered loss solely by reason of his own failure to act or inquire.

*Id.* at 104. GATX relies on an express provision of the schedule which was in Brent Liquid's possession and accessible to Voth. Thus, the plaintiffs are not entitled to equitable relief.

The plaintiffs complain that GATX deliberately waited until the notice deadlines for the schedule barges lapsed before responding to Brent Liquid's proposal for an early buy out. The court finds that GATX had no duty to advise or remind Brent Liquid of the notice provision. The court further finds that time was of the essence, with respect to the written notice requirement, and that Brent Liquid's failure to give timely written notice defeated its right to exercise the option to purchase the schedule barges.

## VII.  Written Notice for the Supplemental Barges

Brent Liquid mailed a timely written notice of intent to exercise the option to purchase the supplemental schedule barges. GATX received the notice on September 11, 1985, before the lease terms of the schedule barges expired. The plaintiffs contend that the notice is valid as to the schedule barges which were still subject to the lease. The schedule expressly provides an option to purchase at the expiration of the lease term "all but not less than all the Vessels then subject to this Lease." The supplemental schedule expressly provides an option to purchase at the expiration of the lease term "all but not less than all the Vessels then subject to this Lease and Supplemental Schedule." Brent Liquid construes the option language in the supplemental schedule as referring to all eight barges—the schedule barges "subject to this Lease" and the barges subject to the supplemental schedule. Since the schedule barges would no longer be subject to the lease at the end of the supplemental schedule lease terms, Brent Liquid argues that the word "then" relates to the time notice is give in order to give effect to the provision for purchase of "all but not less than all."

The court finds that the option language in the supplemental schedule clearly and plainly provides an option to purchase only the four supplemental schedule barges. The contracts for the schedule barges and the supplemental schedule barges were separately negotiated. The lease and schedule were executed on September 24, 1973; the supplemental schedule, which incorporates the terms of the charter/lease agreement, was executed on May 6, 1974. The lease term and rent provisions in the supplemental schedule refer to the vessels "made subject to this Lease and Supplemental Schedule."

The court further finds that the phrase, "then subject to this Lease and

Supplemental Schedule" relates to the time the option is exercised at the expiration of the lease term. Brent Liquid's construction of the phrase as relating to the time notice is given would defeat the 180–day notice provision in the schedule.

### VIII. Brent Liquid's Breach

It is undisputed that Brent Liquid tendered cash payments of the option prices for each schedule barge at the end of each lease term. GATX rejected the payments on the ground that the purchase option had expired. Brent Liquid retained possession of the schedule barges.

The lease expressly requires Brent Liquid to return the barges to GATX at the expiration of the lease terms or upon termination of the lease. The lease allows Brent Liquid thirty days after notice of default to cure any default. In the event Brent Liquid fails to timely cure its default, GATX has the option to terminate the lease by written notice specifying the default and stating the date of termination at least ten days thereafter.

■ Brent Liquid advised GATX that it could not return the first schedule barge at the expiration of its lease term because of necessary repairs. GATX demanded that the barge be returned immediately upon completion of repairs. Brent Liquid failed to do so and GATX gave written notice of default in a telegram on October 28, 1985, stating that failure to return the barge by November 8, 1985 will constitute "an Event of Default under the Charter." Brent Liquid failed to return the barge by November 8, 1985, and did not cure its default within thirty days. In addition, Brent Liquid refused to return the second schedule barge at the end of its lease term. On December 5, 1985, GATX sent Brent Liquid, by mail and telegram, notice of termination effective December 15, 1985, for continuing defaults.

Brent Liquid characterizes the December 5 letter as only a notice of default and argues that it cured any default by returning the barges within thirty days. The court finds that the December 5 notice constitutes notice of termination pursuant to the terms of the charter/lease agreement. The court further finds that, upon termination of the lease, Brent Liquid lost the option to purchase the supplemental schedule barges. The court reserves ruling on the issues of damages arising out of Brent Liquid's breach and GATX's post-termination waiver by invoicing and accepting rental payments on the supplemental schedule barges. ·

### IX. RICO Claims

The plaintiffs filed an amended complaint alleging violation of the Racketeer Influenced and Corrupt Organizations Act (hereinafter referred to as "RICO"), 18 U.S.C. § 1961, *et seq.* GATX moves for dismissal or alternatively for partial summary judgment on the RICO claims. The plaintiffs concede that the amended complaint fails to state a RICO claim since it does not identify a RICO enterprise. *See United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246, 255 (1981) (existence of an enterprise is prerequisite to any RICO action); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984) ("If Union Bank is the enterprise, it cannot also be the RICO defendant."); *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982) (" '[E]nterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit. . . ."), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

Accordingly, the plaintiffs request leave of court to file a second amended complaint to add two GATX employees and agents, Marc Francis and Robert Sammis, as RICO defendants and to identify the enterprise and predicate acts of the alleged racketeering activity.

■ The proposed second amended complaint alleges that Francis and Sammis conducted the affairs of GATX through a pattern of racketeering activity. GATX is identified as the RICO enterprise and yet remains as one of the RICO defendants liable for the alleged RICO violations of

Sammis and Francis. The rule that the RICO defendant must be separate and distinct from the enterprise cannot be circumvented by imposing vicarious liability upon GATX under the doctrine of *respondeat superior. E.g., Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 835 (N.D.Ill.1985). Thus, the court finds that the proposed second amended complaint does not state a RICO claim against GATX.

Another prerequisite to a RICO violation is a pattern of racketeering activity:

> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5). The United States Supreme Court noted that a pattern of racketeering activity contemplates not only a relationship among criminal acts but also continuity of activity. *Sedima v. Imrex Co.,* 473 U.S. 479, —— ——, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346, 358–59 n. 14 (1985).

■ Accordingly, the eighth circuit recently held that several related acts of mail and wire fraud in a single continuing scheme or episode do not constitute a pattern of racketeering activity. *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986). The court held that the relationship prong was established but that continuity requires racketeering activities in criminal episodes or schemes other than the one pending before the court. *Id.* (citing *Northern Trust Bank/O'Hare, N.A. v. Inryco Co., Inc.,* 615 F.Supp. 828, 832 (N.D. Ill.1985)). Similarly, a California district court held that three acts of wire fraud in connection with a single and isolated fraudulent scheme comprised a single criminal episode rather than a pattern of racketeering activity. *Allington v. Carpenter,* 619 F.Supp. 474, 478 (C.D.Cal.1985) ("pattern" connotes multiple events and continuity requires different criminal episodes).

The fifth circuit applied only the relationship prong of the *Sedima* test in holding that two related acts of mail fraud constituted a pattern. *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985). However, district courts have rejected *Hyatt* as wholly ignoring the concept of continuity emphasized by Congress and the Supreme Court. *E.g., Fleet Management Systems, Inc. v. Archer-Daniels-Midland Co.,* 627 F.Supp. 550, 558–59 (C.D.Ill.1986) (*Sedima* and statutory language compel the conclusion that a pattern requires at least two criminal episodes); *Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 n. 3 (N.D. Ill.1985). More recently, the fifth circuit noted that the Supreme Court in *Sedima* criticized prior decisions holding that a series of acts in furtherance of one criminal scheme constitutes a pattern. *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 785 F.2d 1274, 1281–82 n. 7 (5th Cir.1986) (citing district court decisions applying the "continuity plus relationship" test).

The proposed second amended complaint alleges predicate acts on the part of Sammis and Francis in furtherance of a single artifice or scheme for obtaining money or property from Brent Liquid. The alleged acts involve extortion, mail fraud, and wire fraud committed during the course of negotiations for the sale of the schedule and supplemental schedule barges. The court finds that the allegations involve only a single scheme and thus fail to state a pattern of racketeering activity. Since the proposed second amended complaint fails to state a RICO cause of action against GATX and the proposed individual defendants, the court finds that the plaintiffs should not be granted leave to file a second amended complaint.

### X. Conclusion

For the foregoing reasons, the court finds:

That GATX's motion for partial summary judgment on the issues of the purchase options and termination of the parties' bareboat charter/lease agreement is well taken and should be granted;

That GATX's motion to dismiss the RICO claims is well taken and should be granted; and

That the plaintiffs' motion for leave to file a second amended complaint is not well taken and should be denied.

The court reserves ruling on the remaining issues of damages arising out of Brent Liquid's breach and GATX's post-termination waiver as to the supplemental schedule barges.

An order will issue accordingly.