United States Court of Appeals
Fifth Circuit

**F I L E D**

October 15, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-60217
Summary Calendar

_____

Great Atlantic and Pacific Tea Company Inc.,

Plaintiff - Counter Defendant - Appellee,

versus

Norman B. Gillis, Jr.; Norman Gillis Jr. & Associates,

Defendants - Counter Claimants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Mississippi, Jackson
District Court No. 3:00-CV-740-WS

_____

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.[1]

PER CURIAM.

Norman B. Gillis and Norman Gillis Jr. and Associates, Inc.

(Gillis) appeal from a judgment of the district court in favor of

Great Atlantic and Pacific Tea Company (A&P).  The parties are

involved in two lawsuits regarding a commercial property in

McComb, Mississippi that was leased by A&P from Gillis.  The

_____

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

-1-

first suit was filed in Mississippi state court by Gillis against A&P and its sub-lessee, R&M Foods, Inc. (R&M). In that suit Gillis sought a declaratory judgment that he had lawfully cancelled his lease with A&P and was therefore entitled to possession of the property and monetary damages. R&M is a Mississippi corporation.

The second suit, which gave rise to this appeal, was filed in federal district court by A&P against Gillis. In that suit, A&P sought a declaratory judgment under The Declaratory Judgment Act that its lease with Gillis remained in effect and that Gillis was barred from cancelling its lease. *See* 28 U.S.C. § 2201 (West 1994). A&P also requested damages it alleged resulted when Gillis attempted to cancel its lease. Gillis unsuccessfully moved to join R&M as an involuntary plaintiff in the suit. Gillis then filed a motion for "Administrative Dismissal or in the Alternative Abstention," arguing the district court should abstain from hearing A&P's lawsuit because Gillis' lawsuit was pending in state court.

The district court instead held a bench trial. At the end of the trial, the district court determined Gillis was not authorized to cancel his lease with A&P and that A&P had timely cured its initial default by paying to Gillis the required annual percentage rent. Gillis challenges that judgment in this appeal. In particular, Gillis maintains the district court lacked subject

matter jurisdiction and erred in its findings of fact.

## The District Court's Jurisdiction

This Court reviews the district court's decision to issue a declaratory judgment for an abuse of discretion. *See Agora Syndicate v. Robinson Janitorial Specialists*, 149 F.3d 371, 372 (5th Cir. 1998); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-290 (1995) (holding that "district courts' decisions about the propriety of hearing declaratory judgment actions . . . should be reviewed for abuse of discretion."). A reviewing court finds an abuse of discretion, if after examining the evidence, it is left with "[a] 'definite and firm' conviction that the court below committed [a] clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *See Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir.1994) (quoting *Hoffman v. Merrell Dow Pharmaceuticals, Inc.* (*In re Benedictin Litig.*), 857 F.2d 290, 370 (6th Cir. 1988)).

Gillis argues the district court should not have exercised jurisdiction over the instant case because R&M was a necessary party and because his state lawsuit against A&P and R&M was still pending. In the instant case, the district court had discretion, based on general principles of practicality and wise judicial administration, to decide whether to exercise its jurisdiction. *See Wilton*, 515 U.S. at 288 (holding "[i]n the declaratory judgment context, the normal principle that federal courts should

adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). The district court also considered the following factors set forth by this Court in *Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)[2]: 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy.

The district court concluded that practicality, wise

---

[2]The *Travelers* standard is intended for pure declaratory judgment cases and therefore may not have been appropriate in the instant case, which included a counterclaim for monetary damages. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 539 (5th Cir. 2002) (holding that inclusion of timely and non-frivolous monetary damages removed a suit "from the realm of a declaratory judgment action" for purposes of determining exercise of jurisdiction). Yet even if the *Travelers* standard was inappropriate, federal jurisdiction was proper because the alternative standard applied to the facts of this case leads to the same result. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (holding that federal courts have a "virtually unflagging obligation" to exercise their subject matter jurisdiction, despite the pendency of state court proceedings).

judicial administration, convenience to the parties and judicial economy weighed in favor of federal jurisdiction. After reviewing the record, this Court finds ample support for that conclusion: the alternative state forum was less than ninety miles from the district court, the state court proceedings were not yet near resolution, and the instant case was ready for adjudication. Based on these facts, and considering the district court's opportunity to examine the testimony of the witnesses, we find no abuse of discretion in the district court's exercise of jurisdiction.

Part of Gillis' argument against the district court's jurisdiction is that R&M, whose presence would have destroyed diversity jurisdiction, was a necessary party to the instant case. Gillis argues that because R&M was properly joined as a defendant with an interest in the property in the state court suit, it should have been joined as an involuntary plaintiff in the instant suit. The joinder of an involuntary plaintiff, however, is reserved for certain narrowly defined situations. These situations are not implicated in the present case.[3] This

---

[3] A party may be joined as an involuntary plaintiff if the party is an exclusive licensee or the equitable owner of a copyright. *See Caprio v. Wilson*, 513 F.2d 837, 839 (9th Cir. 1975). Additionally, a party may be joined as an involuntary plaintiff if the party has a duty to allow the use of his name in the action or an obligation to join in the action. *See Independent Wireless Telegraph Co. v. Radio Corporation of America*, 269 U.S. 459 (1926).

Court finds no error in the district court's refusal to join R&M as an involuntary plaintiff.

To the extent that Gillis alleges the district court erred by failing to consider his motion for administrative dismissal, this Court finds no error. In his motion, Gillis maintained the district court should abstain from exercising its jurisdiction based on convenience to the parties and avoidance of "useless piecemeal litigation." He argued if he were to succeed in the instant case he would have to bring a second suit to obtain possession of the property from the current tenant, R&M. This is presumably the piecemeal litigation to which Gillis refers. This Court has held that abstaining from the exercise of jurisdiction is proper to avoid multiple lawsuits on the same issue with conflicting results, but not to avoid following the normal legal procedures Gillis describes. *See Travelers*, 996 F.2d at 779. Regarding Gillis' motion, the district court explained that unless a hearing was necessary the suit would proceed to trial.

The district court ultimately considered Gillis' motion, and clearly determined not to stay the case when it proceeded to trial. Moreover, the district court delineated its rationale for exercising jurisdiction over the parties in its March 12, 2003 order. By addressing the question of jurisdiction in its order and having previously explained why R&M would not be joined as an involuntary plaintiff, the district court addressed each of

Gillis' arguments.  This Court finds no error in the district court's handling of Gillis' motion.

## Interpreting the Contract

The sole dispute between the parties is whether A&P's manner of curing its acknowledged rent default entitled Gillis to cancel A&P's lease.  Both parties agree that the governing lease provision required that defaults be cured "as soon as may be reasonably possible."  Gillis alleges the district court erred in finding that A&P complied with this provision.

This Court reviews the district court's findings of fact using a clearly erroneous standard.  *See* FED. R. CIV. P. 52 (a); *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985); and *N.A.A.C.P. v. Fordice*, 252 F.3d 361, 365 (5th Cir. 2001).  A finding is clearly erroneous if, after examining the entire record, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573.  Under this standard an appellate court must defer to a trial court's plausible account of the evidence considered against the entirety of the record, and may not merely substitute its opinion for that of the trial court.  *N.A.A.C.P.*, 252 F.3d at 364.

In the instant case, the district court properly applied Mississippi law to the contract in question.  *See Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995).  Under

Mississippi law, contracts are read in their entirety so as to give effect to all clauses. *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss. 1992). Contract provisions are also reasonably construed, and read so as to avoid giving one party an unfair or unreasonable advantage over the other. *Robinson v. Martel Enterprises, Inc.*, 337 So.2d 698, 701 (Miss. 1976). Additionally under Mississippi law, an implied covenant of good faith and fair dealing is read into every contract. *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992).

Under the terms of the lease between the parties, A&P is required to pay Gillis the lesser of $12,000 or 1% of its gross sales. Because R&M subleases the property from A&P, A&P used R&M's sales figures to calculate the percentage rent due. A&P is required to pay the percentage rent to Gillis by May 31 of each year. In 1999 and 2000, A&P neglected to make this payment. On August 31, 2000, Gillis sent A&P a default notice informing A&P that he would cancel the lease unless it cured the default within ten days. A&P received this notice on September 5, 2000. On September 6, 2000, A&P's Director of Real Estate Law, Robert E. David, called Gillis to ask for an extension and to explain that he needed to obtain the annual sales reports from R&M before A&P could pay Gillis.

At trial, David testified he thought Gillis understood that R&M was entitled to ten days to provide the reports and that

-8-

David would forward the funds as soon as A&P received them from R&M and the funds had cleared A&P's account. Gillis, however, testified he understood David would send the funds as soon as A&P received the reports from R&M. By the time A&P paid Gillis, after waiting for the funds from R&M to clear, Gillis had cancelled the lease with A&P. As a result, the district court had to determine whether A&P's decision to wait for the funds to clear was reasonable and whether Gillis' cancellation of the lease was made in good faith.

The district court had strong evidence to support its finding that A&P's actions were reasonable after considering the contract as a whole, construing the lease provisions reasonably and fairly to each party, and evaluating the good faith each party owed the other. After David and Gillis spoke on September 6, 2000, David sent Gillis a letter confirming his understanding of their conversation, explaining R&M was entitled to ten days to pay A&P under its sub-lease, and citing the over-lease provision that required cure "as soon as may be reasonably possible." Receiving no response, David left a phone message and sent a letter on September 8, 2000. In that letter, David wrote "I will be forwarding payment to you as soon as I receive [R&M's] check and it clears our account." A&P tendered a check for $24,000.00 on Friday September 15, 2000, payable the following Monday, September 18, 2000. The check was made conditional on Gillis' reinstatement of the lease and acceptance of it as a complete

cure.  David's actions, including his explanations to Gillis, indicate A&P was acting in good faith and working quickly to cure its default.  In addition, A&P's conditions on the check were reasonable safeguards to protects A&P's interests in the property.

In examining Gillis' conduct, the district court had evidence that Gillis violated his duty of good faith to A&P.  The district court also properly determined Gillis' conduct could not be sanctioned under a fair reading of the lease provisions.  Throughout the proceedings, Gillis has argued that the arbitrary period of ten days set out in the default notice was to begin the date he mailed the letter (August 31, 2000) and not on the date A&P received the letter (September 5, 2000).  This position means, however, that Gillis only allowed A&P six days from receiving notice to cure its default before he cancelled the lease.  Although Gillis contends A&P's manner of curing was unreasonably protracted, he failed to respond to David's letters that spelled out exactly how A&P planned to cure.

As a result, this Court is not left with a definite or firm conviction that a mistake has been committed.  Consequently, the district court did not err.  Because this Court finds neither clear error in the district court's findings of fact nor abuse of discretion in the its exercise of jurisdiction, this Court affirms the district court's judgment.

AFFIRMED.